**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

Yuliya Glazman,

    *Plaintiff,*

    v.

Citigroup, Inc.,

    *Defendant.*

6: 26cv555-CEM-NWH

Case No. _____

**COMPLAINT AND JURY DEMAND**

**NATURE OF THE ACTION**

1.    Plaintiff Yuliya Glazman brings this action against Defendant Citigroup, Inc. pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.; the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10; and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102. Plaintiff, a female employee with more than fifteen years of cumulative service, was the sole female member of a five-person team, was compensated below the published median for her classification throughout her tenure on that team while her male colleagues were compensated

at or above the median, raised the disparity in writing, received additional work assignments without commensurate compensation following her written complaint, had her work-from-home privileges reduced, and was notified that her position was being eliminated while her male colleagues on the same team were retained.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Age Discrimination in Employment Act of 1967.

3.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims in this action occurred in this district. Plaintiff's principal place of employment was located in this district at all relevant times.

## ELECTION PURSUANT TO 9 U.S.C. §§ 401–402

Pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401–402, Plaintiff elects to void any pre-dispute arbitration agreement or pre-dispute joint-action waiver that would otherwise require arbitration of this dispute. This case relates to a sexual

2

harassment dispute within the meaning of 9 U.S.C. § 401(4). At Plaintiff's election, no pre-dispute arbitration agreement shall be valid or enforceable with respect to this case. 9 U.S.C. § 402(a).

## PARTIES

5.      Plaintiff Yuliya Glazman is a female individual and a resident of Lake County, Florida. At all relevant times, Plaintiff was employed by Defendant in this district.

6.      Defendant Citigroup, Inc. is a Delaware corporation with its principal place of business in New York, New York. Defendant employs more than 500 employees. At all relevant times, Defendant employed Plaintiff at its Tampa facility in this district.

## FACTUAL ALLEGATIONS

### A.      Plaintiff's Employment and Team Composition

7.      Defendant employed Plaintiff continuously from June 2007 to June 2012, and from early 2016 through the present. On March 4, 2026, Defendant notified Plaintiff that her position was being eliminated effective May 7, 2026, as part of a company reorganization.

8.      At all relevant times, Plaintiff held a position within Program Management – Business Execution at a C-Level Classification of 13, within Defendant's organizational and compensation structure.

3

9.    At all relevant times, Plaintiff was assigned to a team of five employees. Plaintiff was the sole female member of this team. The remaining four team members were male.

10.    Plaintiff and her four male colleagues held the same job family classification and C-level designation.

11.    At all relevant times, Plaintiff performed her duties in substantial part from her residence in Lake County, Florida, pursuant to Defendant's work-from-home arrangements.

**B.    Defendant's Compensation Structure and the Disparity**

12.    Defendant published compensation ranges by job family and C-level classification on its internal Workday platform. These ranges were accessible to employees, including Plaintiff. The published range for Plaintiff's classification had a minimum of $113,840 and a maximum of $170,760. The published median for the classification was $142,300.

13.    Throughout her tenure on this team, Plaintiff's compensation remained below the published median for her classification. Plaintiff's compensation was below the median in each year from at least 2022 through 2025.

14.    Plaintiff's male colleagues in the same classification were compensated at levels at or above the published median for the same classification.

4

15.    The annual differential between Plaintiff's compensation and the published median for her classification ranged from approximately $9,634 in 2025 to approximately $21,836 in 2022.

## C.    Plaintiff's Compensation History

16.    Plaintiff's annual compensation from 2022 through 2025 was as follows: approximately $120,464 in 2022; approximately $124,644 in 2023; approximately $128,367 in 2024; and approximately $132,666 in 2025.

17.    Plaintiff's annual compensation increased at a rate of approximately 2.5% to 4.2% per year during her tenure, with increases in the 2.5% range consistent with Defendant's standard annual adjustments.

18.    In January 2026, Plaintiff received a pay increase of approximately 4.2%, raising her annualized compensation to approximately $138,191. This increase was above Defendant's standard annual adjustments, which historically tracked inflation at approximately 2.5%.

19.    The January 2026 increase did not close the gap between Plaintiff's compensation and the published median for her classification, nor did it close the gap between Plaintiff's compensation and that of her male colleagues in the same classification.

20.    Plaintiff received approximately *five* weeks of compensation at the increased rate before Defendant notified her that her position was being eliminated.

## D.    Plaintiff's Performance Ratings

21.  Defendant maintains a performance evaluation system using a 1-to-5 scale, where 1 is the highest achievable rating and 5 is the lowest.

22.  Plaintiff received a rating of 2—the second-highest achievable rating—for the 2022, 2023, 2024, and 2025 performance years. Plaintiff received the second-highest achievable rating for four consecutive years.

23.  Plaintiff's ratings for the 2024 and 2025 performance years reflected her performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

**E.   Plaintiff's Bonus History**

24.  Plaintiff's bonus remained at a consistent level from 2022 through 2025, corresponding to her performance rating of 2 in each year.

25.  In January 2026, Defendant increased Plaintiff's bonus above prior years, reflecting her 2025 performance rating of 2.

26.  Plaintiff was informed that her performance rating directly correlated to her bonus potential, and that a higher rating produced a higher bonus.

27.  Despite four consecutive years of the second-highest achievable rating, Plaintiff received an elevated bonus for the first time in January 2026. Approximately five weeks later, Defendant notified Plaintiff that her position was being eliminated.

**F.   Plaintiff's September 2024 Written Complaint**

6

28.    On September 27, 2024, Plaintiff sent a written communication to her direct supervisor requesting a review of her compensation. Plaintiff identified that Defendant's published compensation data showed her current salary was below the median for her classification.

29.    Plaintiff's direct supervisor acknowledged the compensation disparity in writing and stated that it needed to be corrected.

30.    The direct supervisor's manager also acknowledged the compensation disparity in writing and stated that it needed to be corrected.

### G.    Defendant's Response: HR Refusal to Review

31.    On October 17, 2024, Plaintiff's direct supervisor reported that Defendant's Human Resources department stated it would not conduct a compensation review for an individual employee and suggested that the matter be addressed during the year-end compensation process.

32.    The year-end compensation process for *2024* did not close the gap between Plaintiff's compensation and the published median for her classification.

33.    The year-end compensation process for *2025* did not close the gap between Plaintiff's compensation and the published median for her classification.

### H.    Expansion of Plaintiff's Duties Without Additional Compensation

34.    In 2024, following Plaintiff's September 2024 written complaint, Defendant assigned Plaintiff to develop and report on productivity metrics for the team. This assignment included creating a tracking and verification process where none previously existed.

35.    In 2024, Defendant also assigned Plaintiff to develop and produce a Monthly Operating Review, including developing the underlying reporting processes where none previously existed.

36.    In January 2025, Defendant assigned Plaintiff to serve as Investment Request lead, a function outside her prior job scope.

37.    On January 29, 2025, Plaintiff's direct supervisor directed Plaintiff to serve as backup for a male colleague in the same classification when that colleague was absent from the office. The male colleague already had a designated backup employee. The supervisor's written communication stated that the designated backup "seems unsure of the process still" and directed Plaintiff to "lead and guide" the backup on submissions and follow-ups.

38.    On March 14, 2025, Plaintiff's direct supervisor and the same male colleague requested that Plaintiff investigate headcount matters outside her prior job scope.

39.    On September 30, 2025, Plaintiff was again directed to serve as backup for the same male colleague while that colleague was on vacation.

8

40. On information and belief, the male colleague for whom Plaintiff was directed to serve as backup was compensated at a higher level within the published range for the same classification.

41. Plaintiff's compensation was not adjusted to reflect any of the additional responsibilities assigned following her September 2024 written complaint.

## I.    Reduction of Work-From-Home Privileges

42. Around the same time Plaintiff earned her fourth consecutive performance rating of 2, Defendant reduced Plaintiff's work-from-home privileges. Plaintiff was required to report to the office more frequently than under her prior schedule.

43. No offsetting benefit or accommodation was provided in connection with this change.

## J.    The January 2026 Compensation Adjustment and Bonus

44. In January 2026, Defendant increased Plaintiff's base pay by approximately 4.2% and increased Plaintiff's bonus above prior years.

45. The 4.2% base pay increase was above Defendant's standard annual adjustments, which historically tracked inflation at approximately 2.5%.

46. Neither the base pay increase nor the elevated bonus closed the gap between Plaintiff's compensation and the published median for her classification or the compensation of her male colleagues in the same classification.

## K.    Notification of Position Elimination

47.    On March 4, 2026, Defendant notified Plaintiff via videoconference that her position was being eliminated effective May 7, 2026, as part of a company reorganization. The notification was delivered by the direct supervisor's manager.

48.    On March 6, 2026, Defendant revoked Plaintiff's access to all company systems, including email, internal platforms, and remote work tools. Plaintiff remains on Defendant's payroll through May 7, 2026.

49.    Defendant stated that Plaintiff's work would be absorbed by other employees.

50.    Plaintiff's male colleagues on the same team were not selected for elimination.

51.    At the time of the notification, Plaintiff had been continuously employed by Defendant for approximately ten years.

### L.    The Reduction in Force

52.    On information and belief, based on Plaintiff's personal knowledge of the composition of the reduction in force, approximately 80% of employees selected for elimination were age 40 or older.

53.    Plaintiff was age 40 at the time of notification of her position elimination.

54.    Functions previously performed by Plaintiff are now performed or will be performed by employees under age 40.

55. The complete age distribution of selected and non-selected employees in the reduction in force is within Defendant's exclusive possession and is required to be maintained and disclosed pursuant to 29 U.S.C. § 626(f)(1)(H).

## M. Administrative Predicates

56. On March 15, 2026, Plaintiff executed a verified charge of discrimination and transmitted it by certified mail to the Equal Employment Opportunity Commission, Tampa Field Office, checking the boxes for sex discrimination, age discrimination, and retaliation, and requesting dual filing with the Florida Commission on Human Relations. The charge is currently pending.

## COUNT I
### HOSTILE WORK ENVIRONMENT BASED ON SEX
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

57. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Plaintiff is female.

59. From at least September 2024 through March 4, 2026, Plaintiff was subjected to differential working conditions based on her sex. Plaintiff was the sole female member of a five-person team whose male members were compensated at or above the published median for the classification while Plaintiff was compensated below the median for four or more consecutive years. Following Plaintiff's written complaint in September 2024, Defendant assigned

Plaintiff five categories of additional work without commensurate compensation: productivity tracking and reporting processes created from zero; Monthly Operating Review reporting processes created from zero; the role of Investment Request lead outside her prior scope; backup coverage for a male colleague in the same classification who already had a designated backup; and headcount investigation outside her prior job scope. Defendant directed Plaintiff to provide backup coverage for the same male colleague a second time in September 2025. Plaintiff's compensation was not adjusted for any of these assignments. Following four consecutive performance ratings of 2, Defendant reduced Plaintiff's work-from-home privileges. Defendant did not correct the compensation disparity during two consecutive annual compensation cycles despite written acknowledgment at two management levels. In March 2026, Defendant notified Plaintiff that her position was being eliminated while her male colleagues on the same team were retained.

60.    The conduct described in the preceding paragraph was based on Plaintiff's sex and was continuous from at least September 2024 through March 4, 2026.

61.    The cumulative pattern of differential working conditions was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

62.    Plaintiff's direct supervisor, the direct supervisor's manager, and Defendant's Human Resources department had actual knowledge of the

compensation disparity. Defendant is liable for the conduct of its supervisory employees.

63.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, loss of professional standing, and other economic and non-economic damages.

## COUNT II
### VIOLATION OF THE EQUAL PAY ACT
*(29 U.S.C. § 206(d))*

64.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65.   Plaintiff and her male colleagues performed work requiring equal skill, effort, and responsibility, under similar working conditions. Plaintiff and her male colleagues held the same job family classification and C-level designation. Following her September 2024 written complaint, Plaintiff was assigned additional work previously within the scope of a male colleague in the same classification, who was on information and belief compensated at a higher level within the published range for that classification.

66.   Defendant paid Plaintiff lower wages than her male colleagues for work requiring equal skill, effort, and responsibility, under similar working conditions. The compensation differential is documented in Defendant's own published compensation range data, including the published median of $142,300 and Plaintiff's annual compensation figures from 2022 through 2026.

13

67.     Each paycheck issued to Plaintiff at a rate below that paid to similarly situated male colleagues constitutes a separate violation of 29 U.S.C. § 206(d) pursuant to the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A).

68.     Defendant's violation was willful. Defendant had written notice of the compensation disparity as of September 2024. Defendant's supervisory employees acknowledged the disparity in writing at two management levels and stated it needed to be corrected. Defendant's Human Resources department declined to conduct an individual review. The disparity persisted through two subsequent annual compensation cycles. Four consecutive performance ratings of 2 eliminate any performance-based basis for the differential.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and other damages. Plaintiff is entitled to back pay, liquidated damages in an equal amount for willful violation, and all other relief available under 29 U.S.C. §§ 206(d) and 216(b).

## COUNT III
### SEX-BASED PAY DISCRIMINATION
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

70.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     Plaintiff is female and a member of a protected class under Title VII.

72.     Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive years, including years

14

in which her ratings reflected performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

73.    Plaintiff received lower compensation than similarly situated male employees who held the same job family classification and C-level designation.

74.    On information and belief, male colleagues at equivalent or lower performance ratings were compensated at levels at or above the published median for the classification while Plaintiff was compensated below the median throughout her tenure on the team. The full comparator compensation and performance data is within Defendant's exclusive possession and control.

75.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

## COUNT IV

### RETALIATION
*(Equal Pay Act / FLSA, 29 U.S.C. § 215(a)(3))*

76.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77.    On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor regarding the compensation disparity, identifying that Defendant's published compensation data showed her salary below the median for her classification. This written complaint constitutes protected activity under 29 U.S.C. § 215(a)(3).

78.    Defendant had knowledge of Plaintiff's protected activity. Plaintiff's direct supervisor, the direct supervisor's manager, and Defendant's Human Resources department were each made aware of the September 2024 written complaint.

79.    Following Plaintiff's September 27, 2024 written complaint, Defendant took the following personnel actions: in 2024, assigned Plaintiff to create productivity tracking and verification processes from zero; in 2024, assigned Plaintiff to create Monthly Operating Review reporting processes from zero; in January 2025, assigned Plaintiff to serve as Investment Request lead, a function outside her prior scope; on January 29, 2025, directed Plaintiff to serve as backup for a male colleague in the same classification who already had a designated backup; on March 14, 2025, assigned Plaintiff to investigate headcount matters outside her prior scope; on September 30, 2025, directed Plaintiff to again serve as backup for the same male colleague; reduced Plaintiff's work-from-home privileges following four consecutive performance ratings of 2; did not correct the compensation disparity during the 2024 or 2025 annual compensation cycles; and on March 4, 2026, notified Plaintiff that her position was being eliminated while her male colleagues on the same team were retained.

80.    Plaintiff's compensation was not adjusted to reflect any of the additional responsibilities assigned following her September 2024 written complaint.

16

81.   The sequence of personnel actions described in this Count is continuous from September 27, 2024 through March 4, 2026, with no gap in the sequence exceeding approximately four months.

82.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

## COUNT V
### RETALIATION
*(Title VII, 42 U.S.C. § 2000e-3(a))*

83.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

84.   Plaintiff's September 27, 2024 written complaint to her direct supervisor regarding the compensation disparity constitutes protected opposition to an unlawful employment practice under 42 U.S.C. § 2000e-3(a).

85.   The personnel actions described in Count IV constitute materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination. The sequence of adverse actions is continuous from September 27, 2024 through March 4, 2026, with no gap in the sequence exceeding approximately four months.

86.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

17

## COUNT VI

### AGE DISCRIMINATION
*(ADEA, 29 U.S.C. § 623(a)(1))*

87. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88. Plaintiff was age 40 at the time Defendant notified her that her position was being eliminated. Plaintiff is a member of the class of individuals protected under the Age Discrimination in Employment Act of 1967.

89. Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive years, including ratings that reflected her performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

90. Defendant selected Plaintiff's position for elimination as part of a reduction in force. Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were not selected for elimination.

91. On information and belief, approximately 80% of the employees selected for elimination in the reduction in force were age 40 or older. The functions previously performed by Plaintiff are now performed or will be performed by employees under age 40.

92. Defendant is required to maintain and provide to employees selected for the reduction in force the age and job title of all individuals in the decisional unit who were selected and not selected for the program, pursuant to 29 U.S.C. §

626(f)(1)(H). The complete demographic data is within Defendant's exclusive possession.

93.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

## COUNT VII

### SEX AND AGE DISCRIMINATION
*(Florida Civil Rights Act, Fla. Stat. § 760.10)*

94.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

95.   The Florida Civil Rights Act prohibits discrimination in compensation, terms, conditions, and privileges of employment based on sex and age. Fla. Stat. § 760.10.

96.   Defendant's conduct as described in the preceding paragraphs constitutes discrimination based on sex and age in violation of Fla. Stat. § 760.10. The same factual predicate supporting Plaintiff's federal claims supports the state law claims in this Count.

97.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

19

## COUNT VIII

### WHISTLEBLOWER RETALIATION

*(Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102)*

98.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

99.     Plaintiff is an employee of a private employer within the meaning of Fla. Stat. § 448.101(3).

100.    On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a pay practice that violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). This written complaint constitutes protected activity under Fla. Stat. § 448.102(3).

101.    Following Plaintiff's September 2024 written complaint, Defendant took retaliatory personnel actions, including: assigning additional work without commensurate compensation; declining to correct the compensation disparity through two annual compensation cycles despite written acknowledgment at two management levels; reducing Plaintiff's work-from-home privileges; and notifying Plaintiff that her position was being eliminated effective May 7, 2026, while her male colleagues in the same classification were retained.

102.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, and other damages compensable under Fla. Stat. § 448.103(2).

20

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and grant the following relief:

A.    Under Count I (Title VII — Hostile Work Environment) and Count III (Title VII — Sex-Based Pay Discrimination): back pay from the date of Plaintiff's separation from employment through the date of judgment, at Plaintiff's final annualized rate of compensation plus the annual increases Plaintiff would have received;

B.    Under Counts I and III: front pay in lieu of reinstatement, for a period to be determined by the Court, reflecting Plaintiff's age at the time of separation, more than fifteen years of cumulative tenure, and the specialized nature of her role;

C.    Under Counts I and III: compensatory damages for emotional distress, humiliation, and loss of professional standing, in an amount to be determined at trial, up to the statutory maximum for employers with more than 500 employees pursuant to 42 U.S.C. § 1981a(b)(3)(D);

D.    Under Counts I and III: punitive damages for Defendant's malice or reckless indifference to Plaintiff's federally protected rights, in an amount to be determined at trial, subject to the combined statutory cap under 42 U.S.C. § 1981a(b)(3)(D);

E.    Under Count II (Equal Pay Act): back pay representing the compensation differential for the full statutory period, including a three-

year lookback for willful violation under 29 U.S.C. § 255(a), with each discriminatory paycheck constituting a separate violation pursuant to the Lilly Ledbetter Fair Pay Act of 2009;

F.     Under Count II: liquidated damages in an equal amount to back pay for willful violation, pursuant to 29 U.S.C. § 216(b);

G.     Under Counts IV (EPA/FLSA Retaliation), V (Title VII Retaliation), and VIII (Florida Whistleblower Act): back pay, front pay, and compensatory damages on the independent bases provided by 29 U.S.C. § 215(a)(3), 42 U.S.C. § 2000e-3(a), and Fla. Stat. § 448.103(2), respectively;

H.     Under Count VI (ADEA): back pay from the date of Plaintiff's separation through the date of judgment; liquidated damages in an equal amount for willful violation under 29 U.S.C. § 626(b); and front pay in lieu of reinstatement as an equitable remedy;

I.     Under Count VII (Florida Civil Rights Act): back pay, compensatory damages, and punitive damages as provided under Fla. Stat. § 760.11;

J.     Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 216(b), 29 U.S.C. § 626(b), Fla. Stat. § 448.104, and Fla. Stat. § 760.11;

K.     Prejudgment and post-judgment interest at the applicable federal rate on all amounts awarded; and

L.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims for which a jury trial is available.

Date: March 16, 2026

Respectfully submitted,

Yuliya Glazman
Pro Se Plaintiff
2110 Thousand Trails Road
Clermont, FL 34714
(407) 794-6503
yglazman@protonmail.com