UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Yuliya Glazman,

    *Plaintiff,*

    v.                                 Case No. 6:26-cv-00555-CEM-NWH

Citigroup, Inc., and Citibank, N.A.,

    *Defendants.*

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**NATURE OF THE ACTION**

1.    Plaintiff Yuliya Glazman brings this action against Defendants Citigroup, Inc. and Citibank, N.A. pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., including claims for sex-based hostile work environment, sex-based pay discrimination, sex-based disparate treatment in the terms and conditions of employment and discriminatory termination, and retaliation; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.; the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10; and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102. Plaintiff, a female employee with more than fifteen years of cumulative service employed at Defendants' Tampa-based operations, was the sole female member of a five-person team, was compensated below the published median for her classification throughout her tenure on that team while her male colleagues were compensated at or above the median, raised the

disparity in writing, received additional work assignments without commensurate compensation following her written complaint, was subjected to a recurring pattern of uncompensated corrective assignments for a male colleague's work product while similarly situated male colleagues were not so tasked, had her work-from-home privileges reduced and was required to report in person to Defendants' Tampa office, and was notified that her position was being eliminated while her male colleagues on the same team were retained.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Age Discrimination in Employment Act of 1967.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims in this action occurred in this district, including in Hillsborough County. Plaintiff was hired into Defendants' Tampa-based operations. Plaintiff received initial training at Defendants' Tampa-based operations. Defendants' principal operational footprint for Plaintiff's business unit is located in the Tampa Division. The supervisory personnel and decision-makers responsible for the employment actions at issue in this action were located in the Tampa Division during the

relevant period. In late 2025, Defendants notified Plaintiff that she would be required to report in person to Defendants' Tampa office beginning in early 2026. From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office two days per week.

### ELECTION PURSUANT TO 9 U.S.C. §§ 401–402

5. This case relates to a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4). Without conceding the existence, validity, scope, delegation, or enforceability of, or Plaintiff's assent to, any pre-dispute arbitration agreement or pre-dispute joint-action waiver, Plaintiff elects pursuant to 9 U.S.C. § 402(a) that no pre-dispute arbitration agreement and no pre-dispute joint-action waiver shall be valid or enforceable with respect to this case or the claims asserted in this action. The applicability of Chapter 4 of Title 9 of the United States Code to this dispute, and the validity and enforceability of any agreement to which that Chapter applies, are determined by this Court under the law applicable to a Federal court. 9 U.S.C. § 402(b).

### PARTIES

6. Plaintiff Yuliya Glazman is a female individual and a resident of Lake County, Florida. At all relevant times, Plaintiff was employed by Defendants at Defendants' Tampa-based operations in this district.

7. Defendant Citigroup, Inc. is a Delaware corporation with its principal place of business in New York, New York. Defendant Citigroup, Inc. employs more than 500 employees. At all relevant times, Defendant Citigroup, Inc. employed Plaintiff at Defendants' Tampa facility in this district.

3

8. Defendant Citibank, N.A. is a national banking association and a wholly-owned subsidiary of Defendant Citigroup, Inc. Defendant Citibank, N.A. maintains operations within this district, including at its Tampa facility. Defendant Citibank, N.A. employs more than 500 employees. At all relevant times, Defendant Citibank, N.A. employed Plaintiff at Defendants' Tampa facility in this district.

9. At all relevant times, Defendant Citigroup, Inc. wholly owned Defendant Citibank, N.A. Defendants issued a single Employment Arbitration Policy applicable to Plaintiff. The Policy defines "Citi" as "Citigroup Inc., its subsidiaries and affiliates." Defendants issued a single 2025 U.S. Citi Handbook applicable to Plaintiff. Defendants administered Plaintiff's compensation, benefits, payroll, and Human Resources functions through common platforms and common personnel. The supervisory employees who directed Plaintiff's work, evaluated Plaintiff's performance, and took the employment actions challenged in this action acted on behalf of Defendants. Defendants employed Plaintiff at Defendants' Tampa facility. Defendants maintained common senior management for employment and compensation decisions affecting Plaintiff's business unit. Compensation and personnel policies applicable to Plaintiff were set and administered at the parent level and uniformly applied to employees of both Defendants. The operations of Defendants with respect to Plaintiff's business unit were integrated in management, labor relations, personnel policy, payroll, benefits, and Human Resources administration.

## FACTUAL ALLEGATIONS

4

## A.    Plaintiff's Employment and Team Composition

10.    Defendants employed Plaintiff continuously from June 2007 to June 2012, and from early 2016 through the present. Plaintiff was hired at Defendants' Tampa-based operations and received initial training at Defendants' Tampa-based operations. On March 4, 2026, Defendants notified Plaintiff that her position was being eliminated effective May 7, 2026, as part of a company reorganization.

11.    At all relevant times, Plaintiff held a position within Program Management – Business Execution at a C-Level Classification of 13, within Defendants' organizational and compensation structure.

12.    At all relevant times, Plaintiff was assigned to a team of five employees. Plaintiff was the sole female member of this team. The remaining four team members were male.

13.    Plaintiff and her four male colleagues held the same job family classification and C-level designation.

14.    At times relevant to the claims in this action, Plaintiff performed a portion of her duties from her residence in Lake County, Florida, pursuant to Defendants' work-from-home arrangements. In late 2025, Defendants notified Plaintiff that she would be required to report in person to Defendants' Tampa office beginning in early 2026. From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office two days per week.

5

15.   Plaintiff and her four male colleagues on the five-person team shared core job duties, including program management, business-execution reporting, and investment-request processing functions within Defendants' Program Management – Business Execution organization.

16.   Plaintiff and her four male colleagues performed those duties at the same establishment, namely Defendants' Tampa-based operations in this district, within the meaning of 29 U.S.C. § 206(d).

### B.    Defendants' Compensation Structure and the Disparity

17.   Defendants published compensation ranges by job family and C-level classification on their internal Workday platform. These ranges were accessible to employees, including Plaintiff. The published range for Plaintiff's classification had a minimum of $113,840 and a maximum of $170,760. The published median for the classification was $142,300.

18.   Throughout her tenure on this team, Plaintiff's compensation remained below the published median for her classification. Plaintiff's compensation was below the median in each year from at least 2022 through 2025.

19.   Plaintiff's male colleagues in the same classification were compensated at levels at or above the published median for the same classification.

20.   The annual differential between Plaintiff's compensation and the published median for her classification ranged from approximately $9,634 in 2025 to approximately $21,836 in 2022.

6

## C.    Plaintiff's Compensation History

21.    Plaintiff's annual compensation from 2022 through 2025 was as follows: approximately $120,464 in 2022; approximately $124,644 in 2023; approximately $128,367 in 2024; and approximately $132,666 in 2025.

22.    Plaintiff's annual compensation increased at a rate of approximately 2.5% to 4.2% per year during her tenure, with increases in the 2.5% range consistent with Defendants' standard annual adjustments.

23.    In January 2026, Plaintiff received a pay increase of approximately 4.2%, raising her annualized compensation to approximately $138,191. This increase was above Defendants' standard annual adjustments, which historically tracked inflation at approximately 2.5%.

24.    The January 2026 increase did not close the gap between Plaintiff's compensation and the published median for her classification, nor did it close the gap between Plaintiff's compensation and that of her male colleagues in the same classification.

25.    Plaintiff received approximately five weeks of compensation at the increased rate before Defendants notified her that her position was being eliminated.

## D.    Plaintiff's Performance Ratings

26.    Defendants maintain a performance evaluation system using a 1-to-5 scale, where 1 is the highest achievable rating and 5 is the lowest.

27.    Plaintiff received a rating of 2—the second-highest achievable rating—for the 2022, 2023, 2024, and 2025 performance years. Plaintiff received the second-highest achievable rating for four consecutive years.

28.    Plaintiff's ratings for the 2024 and 2025 performance years reflected her performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

### E.    Plaintiff's Bonus History

29.    Plaintiff's bonus remained at a consistent level from 2022 through 2025, corresponding to her performance rating of 2 in each year.

30.    In January 2026, Defendants increased Plaintiff's bonus above prior years, reflecting her 2025 performance rating of 2.

31.    Plaintiff was informed that her performance rating directly correlated to her bonus potential, and that a higher rating produced a higher bonus.

32.    Despite four consecutive years of the second-highest achievable rating, Plaintiff received an elevated bonus for the first time in January 2026. Approximately five weeks later, Defendants notified Plaintiff that her position was being eliminated.

### F.    Plaintiff's September 2024 Written Complaint

33.    On September 27, 2024, Plaintiff sent a written communication to her direct supervisor requesting a review of her compensation. Plaintiff identified that Defendants' published compensation data showed her current salary was below the median for her classification.

8

34.   Plaintiff's direct supervisor acknowledged the compensation disparity in writing and stated that it needed to be corrected.

35.   The direct supervisor's manager also acknowledged the compensation disparity in writing and stated that it needed to be corrected.

### G.   Defendants' Response: HR Refusal to Review

36.   On October 17, 2024, Plaintiff's direct supervisor reported that Defendants' Human Resources department stated it would not conduct a compensation review for an individual employee and suggested that the matter be addressed during the year-end compensation process.

37.   The year-end compensation process for 2024 did not close the gap between Plaintiff's compensation and the published median for her classification.

38.   The year-end compensation process for 2025 did not close the gap between Plaintiff's compensation and the published median for her classification.

### H.   Expansion of Plaintiff's Duties Without Additional Compensation

39.   In 2024, following Plaintiff's September 2024 written complaint, Defendants assigned Plaintiff to develop and report on productivity metrics for the team. This assignment included creating a tracking and verification process where none previously existed.

40.    In 2024, Defendants also assigned Plaintiff to develop and produce a Monthly Operating Review, including developing the underlying reporting processes where none previously existed.

41.    In January 2025, Defendants assigned Plaintiff to serve as Investment Request lead, a function outside her prior job scope.

42.    On information and belief, the male colleague for whom Plaintiff was directed to serve as backup was compensated at a higher level within the published range for the same classification.

43.    Plaintiff's compensation was not adjusted to reflect any of the additional responsibilities assigned following her September 2024 written complaint.

## I.    Pattern of Sex-Differentiated Corrective Assignments

44.    Beginning in the fourth quarter of 2024, Defendants transferred primary responsibility for the team's headcount-approval process to a newly hired male employee (the "male colleague" referenced in this Section and in the preceding Section). A separate male backup employee — not Plaintiff — was designated to provide coverage for the male colleague.

45.    On January 29, 2025, Plaintiff's direct supervisor directed Plaintiff in writing to serve as backup for the male colleague notwithstanding the existence of the designated backup employee. The supervisor's written communication stated that the designated backup "seems unsure of the process still" and directed Plaintiff to "lead and guide" the designated backup on hiring-council submissions and headcount follow-ups.

46.    While performing this backup assignment, Plaintiff identified errors in the male colleague's work product, including errors in the headcount-tracking report, incorrect status markings for approval requests, and incorrect Position IDs entered for individual requests.

47.    Plaintiff spent approximately one week reconciling data from multiple source systems to correct the tracker and issued written communications to senior managers identifying and correcting the errors. This work displaced time that Plaintiff would otherwise have devoted to her own core responsibilities and caused stress on Plaintiff's deliverable deadlines.

48.    On March 14, 2025, Plaintiff's direct supervisor and the male colleague jointly directed Plaintiff to investigate headcount matters and to run the headcount-approval process as lead, notwithstanding that the designated backup remained in place and notwithstanding that the headcount-approval process was outside Plaintiff's prior job scope.

49.    In the course of the March 2025 engagement, Plaintiff identified additional defects in the male colleague's work product, including incorrect status markings for open approval requests; mis-alignment between Position IDs and the requests they purported to track; errors in C-level classifications and country or city designations for individual requests; and errors in identification of which Position IDs required closure, reopening, or approval.

50.    Plaintiff sent written communications to affected senior leaders identifying the errors and proposing corrections. This work displaced time that

Plaintiff would otherwise have devoted to her own core responsibilities and caused stress on Plaintiff's deliverable deadlines.

51.    In the course of the September 30, 2025 backup assignment referenced in the preceding Section, Plaintiff identified the same categories of errors in the male colleague's work product that she had identified in the January 2025 and March 2025 engagements and performed the same corrective reconciliation and notification work.

52.    Throughout 2025, relationship managers and senior leaders communicated to Plaintiff that they wished Plaintiff would assume end-to-end ownership of the headcount-approval process, stating among other things that Plaintiff produced more accurate tracking, performed the function without recurring errors during her corrective engagements, and was easier to work with on headcount matters.

53.    Notwithstanding the acknowledgments described in the preceding paragraph, Defendants did not re-assign the headcount-approval function to Plaintiff, did not adjust Plaintiff's compensation, and continued to direct Plaintiff to provide uncompensated corrective coverage for the male colleague.

54.    During the period from January 2025 through September 2025, neither the designated male backup employee referenced in the preceding paragraphs nor any of Plaintiff's other male colleagues on the five-person team was directed by Defendants to provide uncompensated corrective coverage for another team member's work product. The designated backup was not directed by Defendants to reconcile, rewrite, or otherwise correct the male colleague's

12

work product during the period from January 2025 through September 2025. Plaintiff alone bore the recurring corrective burden during that period.

### J.    Reduction of Work-From-Home Privileges

55.    In December 2025, Plaintiff received her fourth consecutive performance rating of 2 for the 2025 performance year. In late 2025, Defendants notified Plaintiff that her work-from-home privileges would be reduced and that she would be required to report in person to Defendants' Tampa office beginning in early 2026.

56.    From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office two days per week. The in-person reporting requirement ceased on March 6, 2026, when Defendants revoked Plaintiff's access to all company systems.

57.    Plaintiff's direct supervisor and the decision-makers responsible for the scheduling and operational direction of Plaintiff's work were located in the Tampa Division during the relevant period.

58.    No offsetting benefit or accommodation was provided in connection with these changes.

### K.    The January 2026 Compensation Adjustment and Bonus

59.    In January 2026, Defendants increased Plaintiff's base pay by approximately 4.2% and increased Plaintiff's bonus above prior years.

60.    The 4.2% base pay increase was above Defendants' standard annual adjustments, which historically tracked inflation at approximately 2.5%.

13

61.    Neither the base pay increase nor the elevated bonus closed the gap between Plaintiff's compensation and the published median for her classification or the compensation of her male colleagues in the same classification.

### L.    Notification of Position Elimination

62.    On March 4, 2026, Defendants notified Plaintiff via videoconference that her position was being eliminated effective May 7, 2026, as part of a company reorganization. The notification was delivered by the direct supervisor's manager.

63.    On March 6, 2026, Defendants revoked Plaintiff's access to all company systems, including email, internal platforms, and remote work tools. Plaintiff remains on Defendants' payroll through May 7, 2026.

64.    Defendants stated that Plaintiff's work would be absorbed by other employees.

65.    Plaintiff's male colleagues on the same team were not selected for elimination.

66.    At the time of the notification, Plaintiff had been continuously employed by Defendants for approximately ten years.

### M.    The Reduction in Force

67.    Defendants provided Plaintiff with the disclosure required by 29 U.S.C. § 626(f)(1)(H) in connection with the reduction in force. The disclosure identifies the location, job title, and age of each individual in the decisional unit who was selected and not selected for the termination program.

14

68.    Plaintiff was age 40 at the time of notification of her position elimination.

69.    Functions previously performed by Plaintiff are now performed or will be performed by employees under age 40.

70.    The information disclosed by Defendants under 29 U.S.C. § 626(f)(1)(H) identifies a decisional unit of 41 employees assigned to Defendants' Business Execution and Chief of Staff team across seven locations, including Defendants' Tampa-based operations. The disclosure identifies the location, job title, age, and selection status — selected for termination, selected but re-deployed, or not selected — of each individual in the decisional unit. The criteria applied, business justification, documents reflecting the selection and redeployment process, and internal communications concerning the outcomes shown in the disclosure remain within Defendants' possession and control.

### N.    Administrative Predicates

71.    On April 2, 2026, Plaintiff filed EEOC Charge No. 511-2026-02539 against Defendants. The charge alleges sex-based discrimination in compensation and in the terms and conditions of employment, sex-based hostile work environment, age-based discrimination in connection with Defendants' reduction in force, and retaliation, and asserts these theories under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, the Age Discrimination in Employment Act of 1967, and the Florida Civil Rights Act of 1992. Plaintiff requested dual filing of the charge with the Florida Commission on Human Relations. The charge is currently pending.

15

## COUNT I

### HOSTILE WORK ENVIRONMENT BASED ON SEX
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

72. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, I, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

73. Plaintiff is female and a member of a class protected by Title VII. At all relevant times, Plaintiff was the sole female member of a five-person team. The remaining four members of the team were male.

74. From January 2025 through September 2025, Defendants subjected Plaintiff to a continuous pattern of sex-differentiated working conditions in connection with the team's headcount-approval process and the work product of a male colleague assigned primary responsibility for that process.

75. Defendants, acting through Plaintiff's direct supervisor, repeatedly directed Plaintiff to serve as backup to, and corrective resource for, the male colleague, notwithstanding that Defendants had previously designated a separate male employee as the male colleague's backup. During that period, neither the designated male backup nor any other male colleague on the five-person team was directed by Defendants to provide corrective coverage for any team member's work product.

16

76.    On at least three documented occasions within a nine-month period — January 29, 2025; March 14, 2025; and September 30, 2025 — Plaintiff was directed to perform corrective work on the male colleague's output. That work required reconciliation of data across multiple source systems, identification of errors, and the drafting and issuance of written corrections to senior leaders.

77.    The corrective work described in the preceding paragraph was unwelcome. Plaintiff performed that work under direction from her supervisor rather than by choice. Plaintiff received no additional compensation for the work. Each engagement displaced time Plaintiff would otherwise have devoted to the performance of her own core responsibilities and caused stress on Plaintiff's deliverable deadlines.

78.    Throughout 2025, relationship managers and senior leaders communicated to Plaintiff that they wished Plaintiff would resume ownership of the headcount-approval process, stating among other things that Plaintiff produced more accurate tracking and that Plaintiff performed the function without recurring errors during her corrective engagements. Defendants did not reassign the function to Plaintiff, did not adjust Plaintiff's compensation, and continued to direct Plaintiff to perform uncompensated corrective work on the male colleague's output.

79.    The conduct alleged in the preceding paragraphs of this Count was based on Plaintiff's sex. The pattern of sex-differentiated corrective assignments alleged in this Count occurred concurrently with other sex-differentiated treatment alleged in Counts III and IV of this Amended Complaint. Those

17

concurrent allegations are referenced solely for the limited purpose of supporting the inference that the conduct alleged in this Count was based on Plaintiff's sex, and are not re-pleaded as hostile-environment conduct in this Count.

80. The conduct alleged in this Count was sufficiently pervasive to alter the terms and conditions of Plaintiff's employment and created a working environment that unreasonably interfered with Plaintiff's ability to perform her core responsibilities.

81. The conduct alleged in this Count constitutes sexual harassment in the form of a hostile work environment because of sex within the meaning of 42 U.S.C. § 2000e-2(a)(1). A hostile work environment because of sex under Title VII is not limited to conduct of a sexual or sexually explicit character; it encompasses sex-differentiated working conditions to which an employee is subjected because of sex. Plaintiff's claim in this Count presents a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4).

82. Plaintiff's direct supervisor was a supervisory employee of Defendants. Defendants are liable under Title VII for the conduct of their supervisory employees.

83. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, loss of professional standing, and other economic and non-economic damages.

## COUNT II

18

## VIOLATION OF THE EQUAL PAY ACT
### (29 U.S.C. § 206(d))

84.     Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, I, K, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

85.     Plaintiff and her male colleagues on the five-person team performed work requiring equal skill, effort, and responsibility, under similar working conditions, within the same establishment. Plaintiff and her male colleagues held the same job family classification and C-level designation, and shared core job duties, including program management, business-execution reporting, and investment-request processing functions within Defendants' Program Management – Business Execution organization. Following Plaintiff's September 2024 written complaint, Plaintiff was assigned additional work previously within the scope of a male colleague in the same classification, who on information and belief was compensated at a higher level within the published range for that classification. The additional work was performed without any adjustment to Plaintiff's compensation.

86.     Defendants paid Plaintiff lower wages than her male colleagues for work requiring equal skill, effort, and responsibility, under similar working conditions. The compensation differential is documented in Defendants' own

19

published compensation range data, including the published median of $142,300 and Plaintiff's annual compensation figures from 2022 through 2026.

87.   Each paycheck issued to Plaintiff at a rate below that paid to similarly situated male employees for equal work within the meaning of 29 U.S.C. § 206(d) constitutes a separate violation of that provision. The applicable limitations period is two years, or three years for willful violation, pursuant to 29 U.S.C. § 255(a).

88.   Defendants' violation was willful. Defendants had written notice of the compensation disparity as of September 2024. Defendants' supervisory employees acknowledged the disparity in writing at two management levels and stated it needed to be corrected. Defendants' Human Resources department declined to conduct an individual review. The disparity persisted through two subsequent annual compensation cycles. Four consecutive performance ratings of 2 eliminate any performance-based basis for the differential.

89.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and other damages. Plaintiff is entitled to back pay, liquidated damages in an equal amount for willful violation, and all other relief available under 29 U.S.C. §§ 206(d) and 216(b).

## COUNT III

### SEX-BASED PAY DISCRIMINATION
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

90.   Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§

20

401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, I, K, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

91.    Plaintiff is female and a member of a protected class under Title VII.

92.    Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive years, including years in which her ratings reflected performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

93.    Plaintiff received lower compensation than similarly situated male employees who held the same job family classification and C-level designation.

94.    On information and belief, male colleagues at equivalent or lower performance ratings were compensated at levels at or above the published median for the classification while Plaintiff was compensated below the median throughout her tenure on the team. The full comparator compensation and performance data is within Defendants' exclusive possession and control.

95.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

## COUNT IV
### SEX DISCRIMINATION — UNEQUAL TERMS AND CONDITIONS AND DISCRIMINATORY TERMINATION
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

96.    Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, D, I, J, L, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

97.    Plaintiff is female and a member of a class protected by Title VII. Plaintiff was the sole female member of a five-person team; the remaining four members were male. Plaintiff and her four male colleagues held the same job family classification and C-level designation and shared core job duties within Defendants' Program Management – Business Execution organization at Defendants' Tampa-based operations.

98.    Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive performance years, including ratings that reflected her performance of both her original responsibilities and the additional responsibilities assigned to her.

99.    Defendants subjected Plaintiff to adverse actions in the terms and conditions of her employment that were not imposed on Plaintiff's male colleagues on the same team in the same job family classification and C-level designation. Those adverse actions include:

100.    From January 2025 through September 2025, the recurring assignment of uncompensated corrective coverage for a male colleague's work product, notwithstanding the existence of a designated male backup employee. During that period, neither the designated male backup nor any other male

22

colleague on the five-person team was directed by Defendants to provide corrective coverage for any team member's work product.

101.    In late 2025, the reduction of Plaintiff's work-from-home privileges following Plaintiff's receipt of her fourth consecutive performance rating of 2. From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office two days per week. No offsetting benefit or accommodation was provided in connection with that change.

102.    On March 4, 2026, the selection of Plaintiff's position for elimination effective May 7, 2026. Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were not selected for elimination. Defendants stated that Plaintiff's work would be absorbed by other employees.

103.    The circumstances of the actions alleged in the preceding paragraphs of this Count support an inference that those actions were taken on the basis of Plaintiff's sex. Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, performing the same core duties, were not subjected to the treatment alleged in the preceding paragraphs.

104.    Defendants' actions were intentional and taken with respect to the compensation, terms, conditions, or privileges of Plaintiff's employment within the meaning of 42 U.S.C. § 2000e-2(a)(1).

105.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment

23

benefits, emotional distress, loss of professional standing, and other economic and non-economic damages.

## COUNT V

### RETALIATION
*(Equal Pay Act / FLSA, 29 U.S.C. § 215(a)(3))*

106.   Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, L, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

107.   On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a compensation practice under which Plaintiff was paid below the published median for her classification while Plaintiff's male colleagues in the same classification were paid at or above the median, in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Plaintiff's written complaint put Defendants on notice that Plaintiff was asserting a violation of the Equal Pay Act. This written complaint constitutes protected activity under 29 U.S.C. § 215(a)(3).

108.   Defendants had knowledge of Plaintiff's protected activity. Plaintiff's direct supervisor, the direct supervisor's manager, and Defendants' Human Resources department were each made aware of the September 2024 written complaint.

24

109. Following Plaintiff's September 27, 2024 written complaint, Defendants took the following personnel actions: in 2024, assigned Plaintiff to create productivity tracking and verification processes from zero; in 2024, assigned Plaintiff to create Monthly Operating Review reporting processes from zero; in January 2025, assigned Plaintiff to serve as Investment Request lead, a function outside her prior scope; on January 29, 2025, directed Plaintiff to serve as backup for a male colleague in the same classification who already had a designated backup; on March 14, 2025, assigned Plaintiff to investigate headcount matters outside her prior scope; on September 30, 2025, directed Plaintiff to again serve as backup for the same male colleague; reduced Plaintiff's work-from-home privileges following four consecutive performance ratings of 2; did not correct the compensation disparity during the 2024 or 2025 annual compensation cycles; and on March 4, 2026, notified Plaintiff that her position was being eliminated while her male colleagues on the same team were retained.

110. Plaintiff's compensation was not adjusted to reflect any of the additional responsibilities assigned following her September 2024 written complaint.

111. The sequence of personnel actions described in this Count is continuous from September 27, 2024 through March 4, 2026, with no gap in the sequence exceeding approximately four months.

25

112.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

## COUNT VI
### RETALIATION
*(Title VII, 42 U.S.C. § 2000e-3(a))*

113.   Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, L, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

114.   On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a compensation practice under which Plaintiff was paid below the published median for her classification while Plaintiff's male colleagues in the same classification were paid at or above the median, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Plaintiff's written complaint put Defendants on notice that Plaintiff was opposing a practice made unlawful by Title VII. This written complaint constitutes protected opposition under 42 U.S.C. § 2000e-3(a).

115.   The personnel actions described in Count V constitute materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination. The sequence of adverse actions is

26

continuous from September 27, 2024 through March 4, 2026, with no gap in the sequence exceeding approximately four months.

116.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

## COUNT VII
### AGE DISCRIMINATION
*(ADEA, 29 U.S.C. § 623(a)(1))*

117.   Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, D, L, M, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

118.   Plaintiff was age 40 at the time Defendants notified her that her position was being eliminated. Plaintiff is a member of the class of individuals protected under the Age Discrimination in Employment Act of 1967.

119.   Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive years, including ratings that reflected her performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

27

120. Defendants selected Plaintiff's position for elimination as part of a reduction in force. Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were not selected for elimination.

121. Defendants provided Plaintiff with the disclosure required by 29 U.S.C. § 626(f)(1)(H) in connection with the reduction in force. The disclosure identifies the location, job title, and age of each individual in the decisional unit, including Plaintiff. Defendants stated that Plaintiff's functions would be absorbed by other employees retained by Defendants.

122. The criteria applied, business justification, documents reflecting the selection and redeployment process, and internal communications concerning the outcomes shown in the disclosure described in the preceding paragraph remain within Defendants' possession and control.

123. Defendants' violation of the Age Discrimination in Employment Act was willful within the meaning of 29 U.S.C. § 626(b). At the time Defendants selected Plaintiff's position for elimination, Defendants were in possession of the information required to be disclosed under 29 U.S.C. § 626(f)(1)(H), including the age of each individual in the decisional unit. Defendants retained Plaintiff's male colleagues in the same job family classification and C-level designation, and distributed or will distribute Plaintiff's functions to employees under age 40. The criteria applied, business justification, documents reflecting the selection and redeployment process, and internal communications concerning the selection decisions remain within Defendants' possession and control.

124. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

## COUNT VIII
### SEX DISCRIMINATION
*(Florida Civil Rights Act, Fla. Stat. § 760.10)*

125. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, I, J, K, L, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

126. The Florida Civil Rights Act prohibits discrimination on the basis of sex in compensation and in the terms, conditions, and privileges of employment. Fla. Stat. § 760.10.

127. Defendants' conduct alleged in the preceding paragraphs constitutes discrimination on the basis of sex in violation of Fla. Stat. § 760.10, including unequal compensation for equal work, the creation of a sex-based hostile working environment, unequal terms and conditions of employment, and selection of Plaintiff's position for elimination while Plaintiff's male colleagues in the same job family classification and C-level designation were retained.

128. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

29

## COUNT IX

### AGE DISCRIMINATION
*(Florida Civil Rights Act, Fla. Stat. § 760.10)*

129. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, D, L, M, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

130. The Florida Civil Rights Act prohibits discrimination on the basis of age in compensation and in the terms, conditions, and privileges of employment. Fla. Stat. § 760.10.

131. Plaintiff was age 40 at the time Defendants notified her that her position was being eliminated. Plaintiff is a member of a class protected from age-based employment discrimination under the Florida Civil Rights Act.

132. Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive performance years.

133. Defendants selected Plaintiff's position for elimination as part of a reduction in force. Functions previously performed by Plaintiff are now performed or will be performed by employees under age 40.

134. Defendants' conduct alleged in the preceding paragraphs constitutes discrimination on the basis of age in violation of Fla. Stat. § 760.10.

135.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other economic and non-economic damages.

## COUNT X
### WHISTLEBLOWER RETALIATION
*(Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102)*

136.   Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, and L of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

137.   Plaintiff is an employee of a private employer within the meaning of Fla. Stat. § 448.101(3).

138.   On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a pay practice that violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). This written complaint constitutes protected activity under Fla. Stat. § 448.102(3).

139.   Following Plaintiff's September 2024 written complaint, Defendants took retaliatory personnel actions, including: assigning additional work without commensurate compensation; declining to correct the compensation disparity through two annual compensation cycles despite written acknowledgment at two management levels; reducing Plaintiff's work-from-home privileges; and

notifying Plaintiff that her position was being eliminated effective May 7, 2026, while her male colleagues in the same classification were retained.

140. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, and other damages compensable under Fla. Stat. § 448.103(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and grant the following relief:

For purposes of this Prayer for Relief, the term 'compensation' shall include base salary, annual bonus, long-term incentive awards, deferred compensation, employer 401(k) contributions, pension and cash-balance plan accruals, equity awards, and the value of health, welfare, and other employment benefits, in addition to such other elements of total compensation as the Court determines to be within the scope of make-whole relief under applicable law.

A. Under Count I (Title VII — Hostile Work Environment), Count III (Title VII — Sex-Based Pay Discrimination), and Count IV (Title VII — Sex Discrimination — Unequal Terms and Conditions and Discriminatory Termination): back pay from the date of Plaintiff's separation from employment through the date of judgment, calculated using Plaintiff's final annualized compensation plus the annual compensation increases Plaintiff would have received;

32

B.      Under Count I (Title VII — Hostile Work Environment), Count III (Title VII — Sex-Based Pay Discrimination), and Count IV (Title VII — Sex Discrimination — Unequal Terms and Conditions and Discriminatory Termination): reinstatement to Plaintiff's former position or a substantially equivalent position within the same job family classification and C-level designation, or, in the alternative, front pay for a period to be determined by the Court, reflecting Plaintiff's age at the time of separation, more than fifteen years of cumulative tenure, and the specialized nature of her role;

C.      Under Count I (Title VII — Hostile Work Environment), Count III (Title VII — Sex-Based Pay Discrimination), and Count IV (Title VII — Sex Discrimination — Unequal Terms and Conditions and Discriminatory Termination): compensatory damages for emotional distress, humiliation, and loss of professional standing, in an amount to be determined at trial, up to the statutory maximum for employers with more than 500 employees pursuant to 42 U.S.C. § 1981a(b)(3)(D);

D.      Under Count I (Title VII — Hostile Work Environment), Count III (Title VII — Sex-Based Pay Discrimination), and Count IV (Title VII — Sex Discrimination — Unequal Terms and Conditions and Discriminatory Termination): punitive damages for Defendants' malice or reckless indifference to Plaintiff's federally protected rights, in an amount to be determined at trial, subject to the combined statutory cap under 42 U.S.C. § 1981a(b)(3)(D);

33

E.  Under Count II (Equal Pay Act): back pay representing the compensation differential for the applicable statutory period, including a three-year lookback for willful violation pursuant to 29 U.S.C. § 255(a), with each paycheck issued to Plaintiff at a rate below that paid to similarly situated male employees for equal work within the meaning of 29 U.S.C. § 206(d) constituting a separate violation of that provision;

F.  Under Count II: liquidated damages in an amount equal to back pay for willful violation, pursuant to 29 U.S.C. § 216(b);

G.  Under Count V (EPA/FLSA Retaliation) and Count VI (Title VII Retaliation): back pay, front pay, and compensatory damages on the independent bases provided by 29 U.S.C. § 215(a)(3) and 42 U.S.C. § 2000e-3(a), respectively;

H.  Under Count VII (ADEA): back pay from the date of Plaintiff's separation through the date of judgment; liquidated damages in an amount equal to back pay for willful violation under 29 U.S.C. § 626(b); and reinstatement to Plaintiff's former position or a substantially equivalent position, or, in the alternative, front pay as an equitable remedy;

I.  Under Count VIII (Florida Civil Rights Act — Sex Discrimination): back pay; compensatory damages for mental anguish, loss of dignity, humiliation, and loss of professional standing; and punitive damages, as provided under Fla. Stat. § 760.11(5);

J.      Under Count IX (Florida Civil Rights Act — Age Discrimination):

back pay; compensatory damages for mental anguish, loss of dignity,

humiliation, and loss of professional standing; and punitive damages, as

provided under Fla. Stat. § 760.11(5);

K.      Under Count X (Florida Private Sector Whistleblower Act, Fla. Stat.

§ 448.103(2)): reinstatement to Plaintiff's former position with the same

seniority status Plaintiff would have had absent the violation;

compensation for lost wages, benefits, and other remuneration; and

compensation for any other monetary loss directly caused by the violation;

L.      A permanent injunction pursuant to 42 U.S.C. § 2000e-5(g)(1), 29

U.S.C. § 216(b), 29 U.S.C. § 626(b), and Fla. Stat. § 448.103(2)(b), providing

the following prospective relief:

(1)     Enjoining Defendants from engaging in compensation

practices, performance evaluation practices, and reduction-in-force

selection practices at Defendants' Tampa-based operations within

Program Management – Business Execution that result in sex-based,

age-based, or retaliatory disparities among employees holding the

C-level 13 classification and the classifications immediately above

and below;

(2)     Enjoining Defendants from retaliating against Plaintiff for her

protected activity under 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 215(a)(3),

29 U.S.C. § 623(d), and Fla. Stat. § 448.102, including Plaintiff's filing

of and participation in this action and any conduct occurring after Plaintiff's reinstatement under paragraph B of this Prayer;

(3)     Ordering Defendants to correct Plaintiff's personnel file to reflect the judgment in this action and to remove any notations indicating that Plaintiff's separation from employment was based on Plaintiff's individual performance or fit for her position;

(4)     Ordering Defendants to preserve, for a period of three years from the date of judgment, records of all compensation decisions, performance evaluations, and reduction-in-force selection decisions affecting employees at Defendants' Tampa-based operations within Program Management – Business Execution who hold the C-level 13 classification and the classifications immediately above and below;

(5)     Ordering Defendants to submit annual compliance certifications to the Court, with service on Plaintiff, for a period of three years from the date of judgment, confirming compliance with each provision of the injunction entered in this action;

(6)     Upon Plaintiff's reinstatement, ordering Defendants, at Defendants' expense, to conduct a compensation equity audit of all employees at Defendants' Tampa-based operations within Program Management – Business Execution holding the C-level 13 classification and the classifications immediately above and below, covering compensation decisions made from January 1, 2022

36

through the date of the audit, with the results reported to the Court and served on Plaintiff under seal;

(7)    Upon Plaintiff's reinstatement, ordering Defendants to implement written policies governing compensation decisions and reduction-in-force selection decisions applicable to Program Management – Business Execution at Defendants' Tampa-based operations, addressing at a minimum (i) benchmarking of compensation against the published compensation ranges; (ii) documentation requirements for compensation decisions that depart from the published median; (iii) documentation requirements for reduction-in-force selection decisions; and (iv) pre-implementation review of proposed reduction-in-force selections for disparate treatment and disparate impact on the basis of sex, age, and protected activity;

(8)    Upon Plaintiff's reinstatement, ordering Defendants to provide training, at Defendants' expense, on Title VII, the Equal Pay Act, the Age Discrimination in Employment Act, and the Florida Civil Rights Act, to be completed within ninety days of the date of judgment by Plaintiff's direct supervisor, the direct supervisor's manager, any other individual with supervisory authority over Plaintiff's work following reinstatement, and the decision-makers who participated in the reduction in force affecting Plaintiff's position; and

37

(9)     Upon Plaintiff's reinstatement, ordering Defendants to post, for a period of three years from the date of judgment, notice of the judgment in this action in a location reasonably visible to employees at Defendants' Tampa-based operations within Program Management – Business Execution, in a form approved by the Court;

M.     A declaration pursuant to 28 U.S.C. § 2201 that Defendants' compensation practices and reduction-in-force selection practices with respect to employees in Plaintiff's classification and substantially equivalent classifications violate the Equal Pay Act of 1963, 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1);

N.     An award sufficient to offset the adverse federal and state income tax consequences to Plaintiff of receiving any lump-sum back pay and front pay award under any Count, which tax consequences would not have been incurred had Plaintiff been compensated in the ordinary course of employment;

O.     Costs of this action pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 216(b), 29 U.S.C. § 626(b), Fla. Stat. § 448.104, and Fla. Stat. § 760.11; and, for any period during which Plaintiff is represented by counsel, reasonable attorney's fees under the same provisions;

P.    Prejudgment and post-judgment interest at the applicable federal rate on all amounts awarded; and

Q.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims for which a jury trial is available.

Date: April 23, 2026                                    Respectfully submitted,

Yuliya Glazman
Plaintiff, pro se
2110 Thousand Trails Road
Clermont, FL 34714
(407) 794-6503
yglazman@protonmail.com

39

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record.

Yuliya Glazman