UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**YULIYA GLAZMAN,**

      **Plaintiff,**

**v.**                                                    **Case No. 6:26-CV-00555-CEM-NWH**

**CITIGROUP, INC., and
CITIBANK, N.A.**

      **Defendants.**

_____

### DEFENDANTS CITIGROUP, INC.'S AND CITIBANK, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND COMPEL ARBITRATION

Defendants, Citigroup, Inc.[1] and Citibank, N.A., (hereinafter, collectively "Citi") by and through their undersigned counsel and pursuant to 9 U.S.C. §§ 3-4 and Rule 12(b)(1), move the Court to compel arbitration and dismiss this action. In support of this Motion, Citi states as follows:

### INTRODUCTION

Plaintiff is a current employee of Citibank, N.A., who was recently notified her position was eliminated in a company-wide reorganization. She entered into a valid and binding arbitration agreement with Citibank, N.A., agreeing to submit all covered disputes to binding arbitration administered with AAA. Although her

---

[1] Plaintiff is employed only by Citibank, N.A. and has incorrectly filed suit against Citigroup, Inc.

Amended Complaint is long (40 pages, 140 paragraphs), the gist of her complaint against Citibank, N.A., centers around her pay, her assignments, and her position elimination, which she equates to discrimination and retaliation based on gender, age, and/or a complaint she previously made about her salary. Despite *factually* asserting *disparate treatment and retaliation* claims based on gender, age and alleged protected activity under the Equal Pay Act, Title VII, the ADEA, the Florida Civil Rights Act, and the Florida Private Whistleblower Act, she self-titled Count I (of 10 Counts) as "Hostile Work Environment Based on Sex." Doc. 22 (Amended Complaint) between ¶¶71 and 72 ("AC ___").

Plaintiff's inventive and inaccurate title to Count I does not allow her to avoid her obligation to arbitrate her disputes when the content of her *factual* allegations describes a disparate treatment claim based on job assignments, not a sexually hostile work environment or sexual assault claim. AC ¶¶72-83. Plaintiff's self-serving legal conclusions are not sufficient to transform a disparate treatment claim into a hostile work environment or sexual assault claim. This Court does not have jurisdiction over this dispute and accordingly, should dismiss the Amended Complaint or stay the Amended Complaint and order that the case be submitted to arbitration pursuant to Plaintiff's contractual agreement.

## FACTUAL BACKGROUND

1.     Citibank, N.A. hired Plaintiff in June 2007. AC ¶10. She left Citibank,

N.A. in 2012 and was rehired in February 2016 in the Tampa-based operations. AC ¶10.

2.    Plaintiff was notified she would be terminated because her position was being eliminated in a company reorganization effective May 7, 2026. AC ¶ 62.

3.    On July 3, 2025, Plaintiff acknowledged receipt of the 2025 U.S. Citi Handbook. In pertinent part, Plaintiff's "2025 U.S. Employee Handbook Acknowledgment" ("Acknowledgement"), states:

> **I UNDERSTAND THAT BY ACKNOWLEDGING RECEIPT OF THE 2025 U.S. HANDBOOK AND THE EMPLOYMENT ARBITRATION POLICY, I AM WAIVING ANY RIGHT I MAY HAVE UNDER THE LAW TO BRING EMPLOYMENT-RELATED DISPUTES, WHETHER INITIATED BY ME OR BY CITI, IN FEDERAL OR STATE COURT, OR TO HAVE ANY EMPLOYMENT-RELATED DISPUTE HEARD BY A JURY.** I UNDERSTAND THAT THIS WAIVER OF RIGHTS COVERS ALL TYPES OF EMPLOYMENT- RELATED DISPUTES AS DESCRIBED IN THE ARBITRATION POLICY. I UNDERSTAND THAT I WILL INSTEAD BE REQUIRED TO SUBMIT ALL SUCH EMPLOYMENT- RELATED DISPUTES FOR FINAL AND BINDING DECISION BY AN ARBITRATOR.
>
> **WITH THE EXCEPTION OF THE EMPLOYMENT ARBITRATION POLICY, WHICH IS A STANDALONE AGREEMENT CONTAINED IN APPENDIX A, AND IS A BINDING CONTRACT REQUIRING ME TO ARBITRATE ALL EMPLOYMENT- RELATED DISPUTES**, I UNDERSTAND THAT NOTHING CONTAINED IN THIS HANDBOOK, NOR THE HANDBOOK ITSELF, IS CONSIDERED A CONTRACT OF EMPLOYMENT. . .

Exhibit B of Declaration of Sandrina Wilson ¶¶5-6 ("Wilson Dec.") filed contemporaneously with this Motion (emphasis added).

3

4.     Plaintiff also acknowledged in writing that she was obliged to carefully review the Handbook and that she agreed to submit to arbitration in the event of an employment-related dispute, as stated below:

> **I understand that appended to this Handbook is an Employment Arbitration Policy that requires me and Citi to submit employment-related disputes to binding arbitration** (see Appendix A). **I understand that it's my obligation to read these documents carefully.** I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of my or Citi's right to compel arbitration of employment-related disputes.

Wilson Decl., ¶6, Ex. B (emphasis added).

5.     "The Employment Arbitration Policy," Appendix A (the "Arbitration Policy"), is governed by the Federal Arbitration Act (Title 9 U.S.C.) ("FAA"). Relevant here, the "Scope of Policy" establishes:

> **This Employment Arbitration Policy applies to both [Plaintiff] and to Citi, and makes arbitration the required and exclusive forum for the resolution of all covered employment-related disputes (i.e., other than disputes which are expressly excluded from this Policy as described below) between you and Citi** (including Citi's predecessors, successors and assigns, its current, former, and future parents, subsidiaries and affiliates and its and their current, former, and future officers, directors, employees and agents). However, this Policy doesn't create a legal claim where one does not otherwise exist under law. **Therefore, by acknowledging receipt of this Policy and/or continuing your employment with Citi after this Policy is distributed, you are accepting the Policy and waiving any legal right you may have to bring your employment-related disputes in court and/or to have your disputes heard by a jury.**

Wilson Decl. ¶4, Ex. A (emphasis added).

4

6.     The Arbitration Policy, agreed to by Plaintiff with proper consideration,[2] outlines the type of "disputes" subject to the Policy, as follows:

> Subject to the remainder of this Section, these disputes include, without limitation, claims, demands or actions under **Title VII of the Civil Rights Act of 1964 ("Title VII")**, the Civil Rights Acts of 1866 and 1991, **the Age Discrimination in Employment Act of 1967**, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, **the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963,** the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, **and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment**, compensation, breach of contract, defamation, or retaliation, or any claims arising under or related to the Citigroup Separation Pay Plan.

Wilson Decl., ¶4, Ex. A (emphasis added).

7.     Plaintiff first filed this lawsuit against Citigroup, Inc. on March 16, 2026, asserting claims that are expressly covered by Citibank N.A.'s Arbitration Policy including: discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), age discrimination claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), pay discrimination and retaliation claims under the Equal Pay Act of 1963 ("EPA"),

---

[2] The Arbitration Policy states, "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation to you, as well as your acceptance of employment with Citi, or your continued employment with Citi after this Policy is distributed, shall constitute consideration for and assent to your obligations under this Policy." (Wilson Decl., Ex. A, p. 1)

retaliation claims under the Fair Labor Standards Act ("FLSA"), discrimination and retaliation claims under the Florida Civil Rights Act ("FCRA"), and whistleblower claims under the Florida Private Whistleblower Act. (*Compare* Doc. 1, 1 at 11-20 *with* Wilson Decl., ¶4, Ex. A).

8.     Citi moved to dismiss this action and to compel arbitration on April 8, 2025 on grounds that Plaintiff's claims were all subject to Citibank N.A.'s Arbitration Policy, which she agreed to on July 3, 2025, and that her claims were not exempted from arbitration under the EFAA. Doc. 10.

9.     Plaintiff filed her First Amended Complaint (Doc. 22) on April 23, 2026, adding Citibank, N.A. as a co-defendant; reasserting claims brought under the aforementioned statutes that are covered by Citi's Arbitration Policy. She continues to allege that her claims are exempt from arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401-402. (AC ¶5).

10.    Plaintiff asserts she "elects" to void the Arbitration Policy under the EFAA (AC ¶5), stating:

> The conduct alleged in this Count constitutes sexual harassment in the form of a hostile work environment because of sex within the meaning of 42 U.S.C. § 2000e-2(a)(1). A hostile work environment because of sex under Title VII is not limited to conduct of a sexual or sexually explicit character; it encompasses sex-differentiated working conditions to which an employee is subjected because of sex. Plaintiff's claim in this Count presents a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4).

AC ¶81.

## **ARGUMENT**

**I.     The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") Does Not Apply Because Plaintiff Has Not Alleged a *Plausible* Claim of Sexual Harassment.**

Plaintiff cannot "elect" to void her arbitration agreement because the EFAA does not apply here. Plaintiff has not asserted a *plausible* claim of sexual harassment or sexual assault. The EFAA provides in pertinent part, that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, ... no predispute arbitration agreement ... shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Under the EFAA, a "sexual harassment dispute" is one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." 9 U.S.C. § 401(4). The invoking party must plead a *plausible* sexual harassment claim pursuant to federal pleading standards. *See Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-cv-2341-VMC-TGW, 2024 U.S. Dist. LEXIS 151960, at *13 (M.D. Fla. Aug. 23, 2024) (plaintiff did not state a plausible claim of sexual harassment under the EFAA and recommending district court grant defendant's motion to compel arbitration"); *see Mitchell v. Raymond*

*James & Assocs., Inc.*, No. 8:23-cv-2341-VMC-TGW, 2024 U.S. Dist. LEXIS 170856, at *6 (M.D. Fla. Sep. 23, 2024) (granting defendant's motion to compel arbitration).

Plaintiff has not pled a plausible claim of sexual harassment under Title VII (or the Florida Civil Rights Act) because her allegations do not reference any harassment whatsoever, let alone satisfy the objective threshold to show that a reasonable person would find the alleged actions hostile or abusive. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

To state a sexual harassment/hostile work environment claim under Title VII, a plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of direct or vicarious liability. *See Miller*, 277 F.3d at 1275; *Jones v. Spherion Atlantic Enterp., LLC*, 493 F. App'x 6, 9 (11th Cir. 2012). This legal analysis consists of both a subjective and an objective component to determine whether the conduct is "severe or pervasive." *See Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009). A hostile work environment only exists where the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently pervasive or severe to alter the conditions of the victim's

8

employment and create an abusive working environment. *See Benoit v. Ocwen Fin. Corp.*, 960 F. Supp. 287, 291 (S.D. Fla. 1997) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

Plaintiff's Amended Complaint does not contain any facts demonstrating any element of a sexual harassment claim. AC ¶¶72-83.  Aside from Plaintiff's self-serving title of Count I and her conclusory assertion that "the conduct alleged in this Court constitutes sexual harassment (AC ¶81), Plaintiff does not allege *facts* that she was *harassed* because of her sex by Defendants or that Defendants' actions were sexually motivated. *Id.; see Benoit*, 960 F. Supp. 287, 291 (S.D. Fla. 1997) ("Here, no plaintiff pleads facts to show that she has suffered actionable sexual harassment or that she has been subjected to a legally cognizable hostile environment."). Instead, Plaintiff alleges that she was subjected to *pay discrimination* and disparate working conditions in the form of assignments that her male colleagues were not assigned. *See White v. Atlanta Indep. Sch. Sys.*, No. 1:21-cv-02614-JPB-RGV, 2021 U.S. Dist. LEXIS 271175, at *15-16 (N.D. Ga. Dec. 1, 2021) (noting the "important distinctions depending on whether a plaintiff is claiming disparate treatment or hostile work environment under Title VII" including that "a plaintiff claiming a hostile environment must identify offensive conduct based on sex that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working

9

environment."); *see also Usai v. Club Mgmt. Mia. II LLC*, 801 F. Supp. 3d 1295, 1323 (S.D. Fla. 2025) (noting that "all sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff' work environment."). Although she claims that she was assigned certain tasks and that her colleagues, who were men, were not assigned certain tasks, there are no facts to suggest her assignments were negative, severe or pervasive in the form of treatment or based on Plaintiff's gender other than in a conclusory allegation.  AC ¶79.

Even if all the allegations in Count I of Plaintiff's Amended Complaint were true, which they are not, no reasonable person (or court) could find the conduct described to be sexual or hostile or abusive based on sex, to support a sexually hostile work environment or sexual assault claim.  Simply claiming that her complaint about her pay was "sexual" in nature or that her assignments were gender-based is not sufficient.  For example, in *Torres v. Pasco Cnty.*, No. 8:21-cv-892-TPB-JSS, 2022 U.S. Dist. LEXIS 186735, at *10 (M.D. Fla. Oct. 12, 2022), the Plaintiff alleged that a conversation with her by a male was "sexual" in nature simply because she was a female and the comment was by a male.  She also linked complaints about her employment as being sexual in nature without any evidence that the statements or conduct at issue were related to her sex.  The Court granted

10

summary judgment in favor of defendant on plaintiff's hostile work environment claim. The Judge stated:

> Plaintiff offers no evidence that suggests the employee's remarks implicated her gender in any way. In fact, reviewing the comments made by the employee, it is clear that Plaintiff's gender is not implicated whatsoever. The term "cat call" suggests an inappropriate sexual and gender-based type of comment. Plaintiff has chosen to label the statement at issue here as "cat calls," but her decision to use that label does not mean the statements were actually sexual or gender based. In fact, the three instances of "cat calls" identified by Plaintiff are not sexual in nature and do not support a sexual harassment claim. Plaintiff takes offense here simply because a male employee made statements to her that were not related to work. Under Plaintiff's view of the world, any statement unrelated to work made to another employee of a different gender would constitute unwelcome sexual harassment. No reasonable person (or jury) could find the conduct identified by Plaintiff here to be sexual, related in any way to gender, or sufficiently hostile, or abusive to support an employment discrimination claim.

*Id.* (internal citations omitted). Simply labeling a disparate treatment claim based on gender as "sexual harassment" or "hostile work environment" does not establish a cognizable hostile work environment claim. *See Cornelius v. CVS Pharmacy, Inc.*, 2023 WL 6876925, at *3 (D. N.J. October 18, 2023) ("use of 'sex harassment' did not suggest that the plaintiff's gender or 'sex-based' discrimination claims were automatically converted to sexual harassment claims"); *see Waiguchu v. Morgan Stanley & Co. LLC*, No. 1:25-cv-7443-GHW, 2026 LX 104001, at *31-32 (S.D.N.Y. Apr. 1, 2026) (allegations that plaintiff was subjected to differential treatment based on her gender did not constitute sexual harassment

conduct under the EFAA; defendant's motion to compel arbitration granted). EFAA does not apply here. Respectfully, the Court should dismiss the First Amended Complaint and compel arbitration, consistent with the Parties' agreement.

## II.   Federal Law Requires the Court to Enforce a Valid Arbitration Agreement.

The FAA governs arbitration agreements, including those contained in private employment contracts. *See* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (the FAA governs arbitration clauses in employment contracts other than those for transportation workers); *see Martinez v. Symbotic, LLC*, No. 5:25-cv-706-WWB-PRL, 2026 LX 69782, at *4 (M.D. Fla. Mar. 4, 2026). The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, [] upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to dispel judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Moreover, the Supreme Court has explained the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

Upon finding that a dispute is subject to a binding arbitration agreement,

the FAA mandates courts to compel arbitration of the dispute. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (requiring courts to "rigorously enforce agreements to arbitrate"). This standard is readily met here, thereby requiring the Court to compel arbitration.

**III.   The Court Should Enforce the Existing Valid Arbitration Agreement Entered into by the Parties.**

In the Eleventh Circuit, courts consider the following three factors to determine whether to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate has been waived. *See Martinez*, 2026 LX 69782, at *5 (citing *Exceen v. Ramirez*, No. 8:24-cv-00880-WFJ-AEP, 2024 U.S. Dist. LEXIS 105027, 2024 WL 3327509, at *2 (M.D. Fla. June 13, 2024)). All three factors are met in this case.

**A.   <u>Existence of a Valid Written Agreement to Arbitrate.</u>**

Plaintiff agreed, in writing, to arbitrate employment-related disputes that may arise out of her employment with Defendant. "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67, 139 S. Ct. 524, 202

13

L. Ed. 2d 480 (2019). Under the FAA, "a written arbitration agreement is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. § 2). Courts must apply ordinary state-law principles that govern the formation of contracts when determining whether a valid agreement to arbitrate exists. *See Vaughan v. Athena Bitcoin, Inc.*, No. 25-25141-CV, 2026 LX 111157, at *5 (S.D. Fla. Mar. 24, 2026) (citing *Osterer v. Bam Trading Servs. Inc.*, 753 F. Supp. 3d 1289, 1294 (S.D. Fla. 2024)). A "district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.* (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)).

Here, Citi and Plaintiff entered into a valid agreement to arbitrate. Wilson Decl., ¶¶5-6, Ex. B. The Arbitration Policy provides that it "applies to both [Plaintiff] and to Citi" and that it "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes." *Id.* During the course of Plaintiff's employment with Defendant, she acknowledged receipt of Defendant's 2025 U.S. Citi Handbook and agreed to submit to arbitration in the event of an employment-related dispute. *Id.* Plaintiff also acknowledged that she

was obliged to carefully review the Handbook before agreeing to submit to arbitration, as stated below:

> **I understand that appended to this Handbook is an Employment Arbitration Policy that requires me and Citi to submit employment-related disputes to binding arbitration** (see Appendix A). **I understand that it's my obligation to read these documents carefully.** I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of my or Citi's right to compel arbitration of employment-related disputes.

*Id.* Plaintiff had the opportunity to carefully review the Arbitration Policy and agreed to it by continuing to work for Citi. Plaintiff received consideration in the form of employment with Defendant Citibank, N.A. as well as "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation." Wilson Decl., Ex. A, p. 1. Therefore, the Arbitration Policy should be considered a valid and enforceable arbitration agreement under Florida law as there is no evidence of unconscionability[3] that would render the agreement void.

---

[3] "Florida courts apply the doctrine of unconscionability 'with great caution[.]'" *Lambert*, 2022 U.S. App. LEXIS 18787, at *13 (citing *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st Dist. Ct. App. 2003)). The doctrine is "not a mechanism that allows a party to 'avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous.'" *Id.* "The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering into the contract." *Id.* at *14. (citing *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 n.3 (Fla. 2014)). Here, Plaintiff did not lack meaningful choice as she was advised to carefully read the policy before signing her Handbook Acknowledgment. *See* Wilson Decl., ¶6, Ex. B. Ultimately, Plaintiff agreed to the policy and decided to move forward with her employment with Defendant. *Id.*

### B.     Existence of an Arbitrable Issue.

Every claim asserted in the First Amended Complaint falls within the purview of the Arbitration Policy. As reflected in the Arbitration Policy, the parties agreed to binding arbitration for any and all claims arising under Title VII, the ADEA, the FLSA, the EPA, and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, or retaliation. Wilson Decl., ¶4 Ex. A. All claims asserted in Plaintiff's Complaint fall under one of the aforementioned categories and, accordingly, must be arbitrated.

### C.     The Right to Arbitrate Has Not Been Waived.

Defendants have not waived their right to arbitrate. On the contrary, Defendants file this Motion in lieu of an answer to Plaintiff's First Amended Complaint to *enforce* the Parties' agreement to arbitration. *See KEY W. Jetski, Inc. v. Sayre-Scibona*, No. 4:25-CV-10067-LEIBOWITZ/AUGUSTIN-BIRCH, 2026 LX 96567, at *4 (S.D. Fla. Feb. 17, 2026) (considering whether the party seeking arbitration waived its right to arbitrate by substantially participating in the litigation). Plaintiff, on the other hand, waived her right to litigate this matter by acknowledging receipt of the 2025 U.S. Citi Handbook, which expressly states:

> I UNDERSTAND THAT BY ACKNOWLEDGING RECEIPT OF THE
> 2025 U.S. HANDBOOK AND THE EMPLOYMENT ARBITRATION

POLICY, **I AM WAIVING ANY RIGHT I MAY HAVE UNDER THE LAW TO BRING EMPLOYMENT-RELATED DISPUTES, WHETHER INITIATED BY ME OR BY CITI, IN FEDERAL OR STATE COURT, OR TO HAVE ANY EMPLOYMENT-RELATED DISPUTE HEARD BY A JURY.** I UNDERSTAND THAT THIS WAIVER OF RIGHTS COVERS ALL TYPES OF EMPLOYMENT-RELATED DISPUTES AS DESCRIBED IN THE ARBITRATION POLICY. I UNDERSTAND THAT I WILL INSTEAD BE REQUIRED TO SUBMIT ALL SUCH EMPLOYMENT-RELATED DISPUTES FOR FINAL AND BINDING DECISION BY AN ARBITRATOR.

Wilson Decl., ¶6, Ex. B (emphasis added).

Accordingly, the Court should find that Citi and Plaintiff entered into a valid, enforceable arbitration agreement and that the claims Plaintiff asserts in her First Amended Complaint are enforceable under the parties' agreement.

**IV.   The Court Should Dismiss This Lawsuit as All Claims Are Arbitrable.**

The Court should dismiss this action as all issues are arbitrable. Although the FAA provides that a court must stay the action pending arbitration, courts may order either a stay or dismissal if there is a valid arbitration agreement and if all issues are arbitrable. *See Green v. CVS Health*, No. 3:23-cv-00076-TES, 2023 U.S. Dist. LEXIS 198314, at *5 (M.D. Ga. Nov. 3, 2023) ("First, courts in the Eleventh Circuit treat a motion to compel arbitration as a factual attack on the Court's subject matter jurisdiction, and the Court may dismiss under Federal Rule of Civil Procedure 12(b)(1) if a valid arbitration agreement exists, as in this case. . . Second, the Eleventh Circuit consistently affirms orders compelling arbitration and dismissing the underlying case when—like here—all the issues must be submitted to

17

arbitration.").

As discussed above, the Arbitration Policy provides that all issues pertaining to employment discrimination, whistleblowing, retaliation, and any other employment-related dispute are to be arbitrated. All claims outlined in Plaintiff's First Amended Complaint fall within the purview of the Arbitration Policy. Accordingly, the Court should dismiss this action.

Alternatively, the Court should stay the action pending resolution of Plaintiff's claims through arbitration. *See* 9 U.S.C. § 3, *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992).

**CONCLUSION**

For all reasons provided above, Defendants respectfully request an Order: (1) dismissing this action and compelling Plaintiff to arbitrate her claims; or, alternatively, (2) staying this action and compelling Plaintiff to arbitrate her claims; and (3) any other relief this Court deems just and proper.

**LOCAL RULE 3.01(g) CERTIFICATE**

Counsel for Defendants conferred with Pro Se Plaintiff between May 4, 2026 and May 5, 2026 via e-mail regarding the relief requested in this Motion. Plaintiff opposed the relief requested.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

18

DATED this 5th day of May, 2026.

Respectfully submitted,

JACKSON LEWIS P.C.

By:   */s/ Stephanie Adler-Paindiris*
Stephanie Adler-Paindiris
Florida Bar No. 0523283
stephanie.adler-paindiris@jacksonlewis.com
390 North Orange Avenue, Ste. 1285
Orlando, Florida 32801
Tele:   (407) 246-8440
Fax:    (407) 246-8441

Melissa M. Castillo
Florida Bar No. 1025338
melissa.castillo@jacksonlewis.com
Wells Fargo Center
100 South Ashley Drive, Suite 2200
Tampa, FL 33602
Tele: (813) 512-3210
Fax:  (813) 512-3211

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of May 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, and a copy was electronically furnished via email to yglazman@gmail.com and U.S. Mail to Yuliya Glazman, 2110 Thousand Trails Road, Clermont, FL 34714, *Pro Se Plaintiff.*

*/s/ Stephanie Adler-Paindiris*
Stephanie Adler-Paindiris

4937-5985-3734, v. 3