# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

Yuliya Glazman,

    *Plaintiff,*

    v.                             Case No. 6:26-cv-00555-CEM-NWH

Citigroup, Inc., and Citibank, N.A.,

    *Defendants.*

## PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT

## NATURE OF THE ACTION

1.    Plaintiff Yuliya Glazman brings this action against Defendants Citigroup, Inc. and Citibank, N.A. pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., including claims for sex-based hostile work environment, sex-based pay discrimination, and retaliation; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.; the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10; and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102. Plaintiff, a female employee with more than fifteen years of cumulative service employed at Defendants' Tampa-based operations, was the sole female member of a five-

person team, was compensated below the published median for her classification throughout her tenure on that team while her male colleagues were compensated at or above the median, raised the disparity in writing, received additional work assignments without commensurate compensation following her written complaint, was subjected to a recurring pattern of uncompensated corrective assignments for a male colleague's work product while similarly situated male colleagues were not so tasked, had her work-from-home privileges reduced and was required to report in person to Defendants' Tampa office, and was notified that her position was being eliminated while her male colleagues on the same team were retained. After Plaintiff filed this action and while Plaintiff remained employed, Defendants recruited Plaintiff for an open internal position, interviewed Plaintiff, selected a male candidate, and tendered separation instruments that conditioned separation pay on execution of terms affecting Plaintiff's pending protected proceedings, including a later condition requiring dismissal of this action with prejudice before payment.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including Title VII

2

of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Age Discrimination in Employment Act of 1967.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims in this action occurred in this district, including in Hillsborough County. Plaintiff was hired into Defendants' Tampa-based operations. Plaintiff received initial training at Defendants' Tampa-based operations. Defendants' principal operational footprint for Plaintiff's business unit is located in the Tampa Division. The supervisory personnel and decision-makers responsible for the employment actions at issue in this action were located in the Tampa Division during the relevant period. In late 2025, Defendants notified Plaintiff that she would be required to report in person to Defendants' Tampa office beginning in early 2026. From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office three days per week.

## ELECTION PURSUANT TO 9 U.S.C. §§ 401–402

5.     This case relates to a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4). Without conceding the existence, validity, scope, delegation, enforceability of, or Plaintiff's assent to, any pre-dispute arbitration agreement or pre-dispute joint-action waiver, Plaintiff elects pursuant to 9 U.S.C. § 402(a) that no pre-dispute arbitration agreement or pre-dispute joint-action waiver shall be valid or enforceable with respect to this case. The applicability of Chapter 4 of Title 9 of the United States Code, and the validity and enforceability of any agreement to which that Chapter applies, are determined by this Court pursuant to 9 U.S.C. § 402(b).

## PARTIES

6.     Plaintiff Yuliya Glazman is a female individual and a resident of Lake County, Florida. At all relevant times, Plaintiff was employed by Defendants at Defendants' Tampa-based operations in this district.

7.     Defendant Citigroup, Inc. is a Delaware corporation with its principal place of business in New York, New York. Defendant Citigroup, Inc. employs more than 500 employees. At all relevant times, Defendant Citigroup, Inc. employed Plaintiff at Defendants' Tampa facility in this district.

4

8.      Defendant Citibank, N.A. is a national banking association and a wholly-owned subsidiary of Defendant Citigroup, Inc. Defendant Citibank, N.A. maintains operations within this district, including at its Tampa facility. Defendant Citibank, N.A. employs more than 500 employees. At all relevant times, Defendant Citibank, N.A. employed Plaintiff at Defendants' Tampa facility in this district.

9.      At all relevant times, Defendant Citigroup, Inc. wholly owned Defendant Citibank, N.A. Defendants issued a single Employment Arbitration Policy applicable to Plaintiff. The Policy defines "Citi" as "Citigroup Inc., its subsidiaries and affiliates." Defendants issued a single 2025 U.S. Citi Handbook applicable to Plaintiff. Defendants administered Plaintiff's compensation, benefits, payroll, and Human Resources functions through common platforms and common personnel. The supervisory employees who directed Plaintiff's work, evaluated Plaintiff's performance, and took the employment actions challenged in this action acted on behalf of Defendants. Defendants employed Plaintiff at Defendants' Tampa facility. Defendants maintained common senior management for employment and compensation decisions affecting Plaintiff's business unit. Compensation and personnel policies applicable to Plaintiff were

5

set and administered at the parent level and uniformly applied to employees of both Defendants. The operations of Defendants with respect to Plaintiff's business unit were integrated in management, labor relations, personnel policy, payroll, benefits, and Human Resources administration.

## FACTUAL ALLEGATIONS

### A.    Plaintiff's Employment and Team Composition

10.    Defendants employed Plaintiff continuously from June 2007 to June 2012, and from early 2016 through the present. Plaintiff was hired at Defendants' Tampa-based operations and received initial training at Defendants' Tampa-based operations. On March 4, 2026, Defendants notified Plaintiff that her position was being eliminated effective May 7, 2026, as part of a company reorganization.

11.    At all relevant times, Plaintiff held a position within Program Management – Business Execution at a C-Level Classification of 13, within Defendants' organizational and compensation structure.

12.    At all relevant times, Plaintiff was assigned to a team of five employees. Plaintiff was the sole female member of this team. The remaining four team members were male.

13.    Plaintiff and her four male colleagues held the same job family classification and C-level designation.

6

14.  At times relevant to the claims in this action, Plaintiff performed a portion of her duties from her residence in Lake County, Florida, pursuant to Defendants' work-from-home arrangements. In late 2025, Defendants notified Plaintiff that she would be required to report in person to Defendants' Tampa office beginning in early 2026. From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office three days per week.

15.  Plaintiff and her four male colleagues on the five-person team shared core job duties, including program management, business-execution reporting, and investment-request processing functions within Defendants' Program Management – Business Execution organization.

16.  Plaintiff and her four male colleagues performed those duties at the same establishment, namely Defendants' Tampa-based operations in this district, within the meaning of 29 U.S.C. § 206(d).

**B.    Defendants' Compensation Structure and the Disparity**

17.  Defendants published compensation ranges by job family and C-level classification on their internal Workday platform. These ranges were accessible to employees, including Plaintiff. The published range for Plaintiff's classification

7

had a minimum of $113,840 and a maximum of $170,760. The published median

for the classification was $142,300.

18.    Throughout her tenure on this team, Plaintiff's compensation

remained below the published median for her classification. Plaintiff's

compensation was below the median in each year from at least 2022 through 2025.

19.    Plaintiff's male colleagues in the same classification were

compensated at levels at or above the published median for the same

classification.

20.    The annual differential between Plaintiff's compensation and the

published median for her classification ranged from approximately $9,634 in 2025

to approximately $21,836 in 2022.

### C.    Plaintiff's Compensation History

21.    Plaintiff's annual compensation from 2022 through 2025 was as

follows: approximately $120,464 in 2022; approximately $124,644 in 2023;

approximately $128,367 in 2024; and approximately $132,666 in 2025.

22.    Plaintiff's annual compensation increased at a rate of approximately

2.5% to 4.2% per year during her tenure, with increases in the 2.5% range

consistent with Defendants' standard annual adjustments.

8

23.    In January 2026, Plaintiff received a pay increase of approximately 4.2%, raising her annualized compensation to approximately $138,191. This increase was above Defendants' standard annual adjustments, which historically tracked inflation at approximately 2.5%.

24.    The January 2026 increase did not close the gap between Plaintiff's compensation and the published median for her classification, nor did it close the gap between Plaintiff's compensation and that of her male colleagues in the same classification.

25.    Plaintiff received approximately five weeks of compensation at the increased rate before Defendants notified her that her position was being eliminated.

### D.    Plaintiff's Performance Ratings

26.    Defendants maintain a performance evaluation system using a 1-to-5 scale, where 1 is the highest achievable rating and 5 is the lowest.

27.    Plaintiff received a rating of 2—the second-highest achievable rating—for the 2022, 2023, 2024, and 2025 performance years. Plaintiff received the second-highest achievable rating for four consecutive years.

28. Plaintiff's ratings for the 2024 and 2025 performance years reflected her performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

### E. Plaintiff's Bonus History

29. Plaintiff's bonus remained at a consistent level from 2022 through 2025, corresponding to her performance rating of 2 in each year.

30. In January 2026, Defendants increased Plaintiff's bonus above prior years, reflecting her 2025 performance rating of 2.

31. Plaintiff was informed that her performance rating directly correlated to her bonus potential, and that a higher rating produced a higher bonus.

32. Despite four consecutive years of the second-highest achievable rating, Plaintiff received an elevated bonus for the first time in January 2026. Approximately five weeks later, Defendants notified Plaintiff that her position was being eliminated.

### F. Plaintiff's September 2024 Written Complaint

33. On September 27, 2024, Plaintiff sent a written communication to her direct supervisor requesting a review of her compensation. Plaintiff identified that Defendants' published compensation data showed her current salary was below the median for her classification.

10

34. Plaintiff's direct supervisor acknowledged the compensation disparity in writing and stated that it needed to be corrected.

35. The direct supervisor's manager also acknowledged the compensation disparity in writing and stated that it needed to be corrected.

### G.    Defendants' Response: HR Refusal to Review

36. On October 17, 2024, Plaintiff's direct supervisor reported that Defendants' Human Resources department stated it would not conduct a compensation review for an individual employee and suggested that the matter be addressed during the year-end compensation process.

37. The year-end compensation process for 2024 did not close the gap between Plaintiff's compensation and the published median for her classification.

38. The year-end compensation process for 2025 did not close the gap between Plaintiff's compensation and the published median for her classification.

### H.    Expansion of Plaintiff's Duties Without Additional Compensation

39. In 2024, following Plaintiff's September 2024 written complaint, Defendants assigned Plaintiff to develop and report on productivity metrics for the team. This assignment included creating a tracking and verification process where none previously existed.

40.    In 2024, Defendants also assigned Plaintiff to develop and produce a Monthly Operating Review, including developing the underlying reporting processes where none previously existed.

41.    In January 2025, Defendants assigned Plaintiff to serve as Investment Request lead, a function outside her prior job scope.

42.    On January 29, 2025, Plaintiff's direct supervisor directed Plaintiff to serve as backup for a male colleague in the same classification when that colleague was absent from the office. The male colleague already had a designated backup employee. The supervisor's written communication stated that the designated backup "seems unsure of the process still" and directed Plaintiff to "lead and guide" the backup on submissions and follow-ups.

43.    On March 14, 2025, Plaintiff's direct supervisor and the same male colleague requested that Plaintiff investigate headcount matters outside her prior job scope.

44.    On September 30, 2025, Plaintiff was again directed to serve as backup for the same male colleague while that colleague was on vacation.

45.    On information and belief, the male colleague for whom Plaintiff was directed to serve as backup was compensated at a higher level within the published range for the same classification.

46.    Plaintiff's compensation was not adjusted to reflect any of the additional responsibilities assigned following her September 2024 written complaint.

I.    **Pattern of Sex-Differentiated Corrective Assignments**

47.    Beginning in the fourth quarter of 2024, Defendants transferred primary responsibility for the team's headcount-approval process to a newly hired male employee (the "male colleague" referenced in this Section and in the preceding Section). A separate male backup employee — not Plaintiff — was designated to provide coverage for the male colleague.

48.    On January 29, 2025, Plaintiff's direct supervisor directed Plaintiff in writing to serve as backup for the male colleague notwithstanding the existence of the designated backup employee. The supervisor's written communication stated that the designated backup "seems unsure of the process still" and directed Plaintiff to "lead and guide" the designated backup on hiring-council submissions and headcount follow-ups.

13

49. While performing this backup assignment, Plaintiff identified errors in the male colleague's work product, including errors in the headcount-tracking report, incorrect status markings for approval requests, and incorrect Position IDs entered for individual requests.

50. Plaintiff spent approximately one week reconciling data from multiple source systems to correct the tracker and issued written communications to senior managers identifying and correcting the errors. This work displaced time that Plaintiff would otherwise have devoted to her own core responsibilities and caused stress on Plaintiff's deliverable deadlines.

51. On March 14, 2025, Plaintiff's direct supervisor and the male colleague jointly directed Plaintiff to investigate headcount matters and to run the headcount-approval process as lead, notwithstanding that the designated backup remained in place and notwithstanding that the headcount-approval process was outside Plaintiff's prior job scope.

52. In the course of the March 2025 engagement, Plaintiff identified additional defects in the male colleague's work product, including incorrect status markings for open approval requests; mis-alignment between Position IDs and the requests they purported to track; errors in C-level classifications and country

14

or city designations for individual requests; and errors in identification of which Position IDs required closure, reopening, or approval.

53.   Plaintiff sent written communications to affected senior leaders identifying the errors and proposing corrections. This work displaced time that Plaintiff would otherwise have devoted to her own core responsibilities and caused stress on Plaintiff's deliverable deadlines.

54.   In the course of the September 30, 2025 backup assignment referenced in the preceding Section, Plaintiff identified the same categories of errors in the male colleague's work product that she had identified in the January 2025 and March 2025 engagements and performed the same corrective reconciliation and notification work.

55.   Throughout 2025, relationship managers and senior leaders communicated to Plaintiff that they wished Plaintiff would assume end-to-end ownership of the headcount-approval process, stating among other things that Plaintiff produced more accurate tracking, performed the function without recurring errors during her corrective engagements, and was easier to work with on headcount matters.

56.    Notwithstanding the acknowledgments described in the preceding paragraph, Defendants did not re-assign the headcount-approval function to Plaintiff, did not adjust Plaintiff's compensation, and continued to direct Plaintiff to provide uncompensated corrective coverage for the male colleague.

57.    During the period from January 2025 through September 2025, neither the designated male backup employee referenced in the preceding paragraphs nor any of Plaintiff's other male colleagues on the five-person team was directed by Defendants to provide uncompensated corrective coverage for another team member's work product. The designated backup was not directed by Defendants to reconcile, rewrite, or otherwise correct the male colleague's work product during the period from January 2025 through September 2025. Plaintiff alone bore the recurring corrective burden during that period.

J.    **Reduction of Work-From-Home Privileges**

58.    In December 2025, Plaintiff received her fourth consecutive performance rating of 2 for the 2025 performance year. In late 2025, Defendants notified Plaintiff that her work-from-home privileges would be reduced and that she would be required to report in person to Defendants' Tampa office beginning in early 2026.

59.    From early 2026 through March 6, 2026, Defendants required Plaintiff to report in person to Defendants' Tampa office three days per week. The in-person reporting requirement ceased on March 6, 2026, when Defendants revoked Plaintiff's access to all company systems.

60.    Plaintiff's direct supervisor and the decision-makers responsible for the scheduling and operational direction of Plaintiff's work were located in the Tampa Division during the relevant period.

61.    No offsetting benefit or accommodation was provided in connection with these changes.

**K.    The January 2026 Compensation Adjustment and Bonus**

62.    In January 2026, Defendants increased Plaintiff's base pay by approximately 4.2% and increased Plaintiff's bonus above prior years.

63.    The 4.2% base pay increase was above Defendants' standard annual adjustments, which historically tracked inflation at approximately 2.5%.

64.    Neither the base pay increase nor the elevated bonus closed the gap between Plaintiff's compensation and the published median for her classification or the compensation of her male colleagues in the same classification.

**L.    Notification of Position Elimination**

17

65. On March 4, 2026, Defendants notified Plaintiff via videoconference that her position was being eliminated effective May 7, 2026, as part of a company reorganization. The notification was delivered by the direct supervisor's manager.

66. On March 6, 2026, Defendants revoked Plaintiff's access to all company systems, including email, internal platforms, and remote work tools. Plaintiff remains on Defendants' payroll through May 7, 2026.

67. Defendants stated that Plaintiff's work would be absorbed by other employees.

68. Plaintiff's male colleagues on the same team were not selected for elimination.

69. At the time of the notification, Plaintiff had been continuously employed by Defendants for approximately ten years.

**M.    The Reduction in Force**

70. Defendants provided Plaintiff with the disclosure required by 29 U.S.C. § 626(f)(1)(H) in connection with the reduction in force. The disclosure identifies the location, job title, and age of each individual in the decisional unit who was selected and not selected for the termination program.

18

71. Plaintiff was age 40 at the time of notification of her position elimination.

72. Functions previously performed by Plaintiff are now performed or will be performed by employees under age 40.

73. The information disclosed by Defendants under 29 U.S.C. § 626(f)(1)(H) identifies a decisional unit of 41 employees assigned to Defendants' Business Execution and Chief of Staff team across seven locations, including Defendants' Tampa-based operations. The disclosure identifies the location, job title, age, and selection status — selected for termination, selected but re-deployed, or not selected — of each individual in the decisional unit.

74. The selection criteria, business justification, individual-level records, documents reflecting the selection and redeployment process, and internal communications concerning the outcomes shown in the disclosure remain within Defendants' possession and control.

N.    **Administrative Predicates**

75. On April 2, 2026, Plaintiff filed EEOC Charge No. 511-2026-02539 against Defendants. The charge alleges sex-based discrimination in compensation and in the terms and conditions of employment, sex-based hostile work environment, age-based discrimination in connection with Defendants' reduction

19

in force, and retaliation, and asserts these theories under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, the Age Discrimination in Employment Act of 1967, and the Florida Civil Rights Act of 1992. Plaintiff requested dual filing of the charge with the Florida Commission on Human Relations. The charge is currently pending.

76.    On May 14, 2026, Plaintiff filed a second EEOC charge against Defendants, cross-filed with the Florida Commission on Human Relations. The second charge alleges retaliation in connection with the post-filing conduct described in Section O of these Factual Allegations, including the recruitment-and-non-selection sequence and the separation instruments described therein, and asserts these theories under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, the Age Discrimination in Employment Act of 1967, and the Florida Civil Rights Act of 1992. The charge is currently pending.

### O.    Post-Filing Employment-Period Conduct

77.    On approximately March 4, 2026, Defendants notified Plaintiff that her position was being eliminated effective May 7, 2026. Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were not selected for elimination.

78. On March 6, 2026, Defendants terminated Plaintiff's access to Defendants' digital systems, including email, internal platforms, and the internal job application portal. Plaintiff's formal employment continued through May 7, 2026.

79. Plaintiff filed this action on March 16, 2026.

80. On April 7, 2026, Defendants delivered a Separation Agreement and General Release to Plaintiff. At the time Defendants delivered the agreement, this action was pending on the docket of this Court and Plaintiff's EEOC charge had been filed.

81. Defendants appeared through counsel on April 8, 2026.

82. Paragraph 7(b) of the Separation Agreement required Plaintiff to represent and warrant that she had not filed, directly or indirectly, nor caused to be filed, any legal proceeding against Defendants in any state or federal court or in arbitration, or any administrative proceeding with any agency having jurisdiction over claims of employment discrimination.

83. The representation required by Paragraph 7(b) was inaccurate when Defendants delivered the agreement. This action had been pending since March 16, 2026. Plaintiff's EEOC charge had been filed on April 2, 2026.

21

84.    The Separation Agreement conditioned Plaintiff's receipt of separation pay on Plaintiff's execution of the agreement, including the representation in Paragraph 7(b). Execution of the agreement required Plaintiff to attest to a representation that was inaccurate. If Plaintiff did not execute the agreement, Defendants would not pay the separation pay described in the agreement.

85.    After filing this action, and while Plaintiff remained employed by Defendants, Defendants' personnel recruited Plaintiff for an open internal position. Plaintiff did not solicit this recruitment.

86.    On April 23, 2026, Defendants interviewed Plaintiff for the internal position. At the conclusion of the interview, Defendants' personnel advised Plaintiff that she would receive follow-up within approximately one week.

87.    Defendants did not provide the stated follow-up within the stated timeframe. Plaintiff sent a follow-up communication. Defendants did not respond.

88.    Defendants selected a male candidate for the position. This employment decision was made before Plaintiff's formal separation date of May 7, 2026, while Plaintiff remained an employee of Defendants.

22

89.    At the time of the employment decision, Defendants had institutional knowledge of this action through their litigation counsel, who had appeared on April 8, 2026.

90.    On May 11, 2026, Defendants tendered a revised Separation Agreement. Paragraph 5(a) of the revised agreement included the claims asserted in this action, identified by case number, within the scope of Plaintiff's release.

91.    Paragraph 7(b) of the revised agreement required Plaintiff to acknowledge that she would dismiss this action with prejudice and release all claims asserted in it in exchange for the consideration provided in the agreement.

92.    Paragraph 17(a)(ii) of the revised agreement conditioned Defendants' payment obligation on Defendants' receipt of an order from this Court reflecting that this action had been dismissed with prejudice.

93.    Paragraph 16 of the revised agreement provided that disputes concerning the validity, interpretation, or enforcement of the agreement would be resolved through binding arbitration. Paragraph 18 provided that Defendants, as prevailing party, would be entitled to attorneys' fees and expenses incurred in connection with enforcing Defendants' rights under that paragraph. The revised

23

agreement contained no reciprocal fee-recovery provision for Plaintiff in Paragraph 18.

94.    Plaintiff did not execute either the original or the revised Separation Agreement.

## COUNT I

### HOSTILE WORK ENVIRONMENT BASED ON SEX
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

95.    Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, D, F, G, H, I, J, K, L, M, N, and O of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

96.    Plaintiff is female and was the sole female member of a five-person team at all relevant times.

97.    From at least September 2024 through May 7, 2026, Plaintiff was subjected to a continuous pattern of sex-differentiated working conditions.

98.    Defendants, acting through Plaintiff's direct supervisor, repeatedly directed Plaintiff to serve as backup to, and corrective resource for, a male

24

colleague in the same classification whose work product contained recurring errors in the headcount-approval process.

99. Defendants directed Plaintiff to perform this corrective work on at least three documented occasions within a nine-month period — January 29, 2025; March 14, 2025; and September 30, 2025 — notwithstanding that a designated backup employee had been assigned to the male colleague and remained in place throughout that period. Plaintiff's compensation was not adjusted to reflect this additional scope.

100. Each such engagement required Plaintiff to reconcile data from multiple source systems, to identify and draft written corrections to senior leaders, and to displace time from the performance of her own core responsibilities, causing stress on Plaintiff's deliverable deadlines.

101. Throughout 2025, relationship managers and senior leaders communicated to Plaintiff that they wished Plaintiff would resume ownership of the headcount-approval process because Plaintiff had performed the function with greater accuracy and reliability than the male colleague.

102. Defendants did not restore the function to Plaintiff, did not adjust Plaintiff's compensation, and continued to direct Plaintiff to perform uncompensated corrective work for the male colleague.

103. The pattern of sex-differentiated corrective assignments described in the preceding paragraphs of this Count occurred concurrently with additional sex-differentiated treatment in other terms and conditions of Plaintiff's employment, as set forth in the four paragraphs immediately following.

104. Throughout the relevant period, Plaintiff remained compensated below the published median for her classification while Plaintiff's male colleagues in the same classification were compensated at or above the median.

105. Following Plaintiff's September 2024 written complaint, Defendants assigned Plaintiff additional uncompensated scope outside her prior responsibilities.

106. Following Plaintiff's receipt of her fourth consecutive performance rating of 2 in December 2025, Defendants reduced Plaintiff's work-from-home privileges and required Plaintiff to report in person to Defendants' Tampa office three days per week from early 2026 through March 6, 2026.

26

107. On March 4, 2026, Defendants notified Plaintiff that her position was being eliminated while Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were retained.

108. The contemporaneous treatment described in the four preceding paragraphs constitutes contextual evidence that the pattern of corrective assignments described earlier in this Count reflected treatment based on Plaintiff's sex rather than a neutral workload allocation.

109. The conduct described in the preceding paragraphs was based on Plaintiff's sex and was sufficiently pervasive to alter the terms and conditions of Plaintiff's employment and to create a working environment that unreasonably interfered with Plaintiff's ability to perform her core responsibilities.

110. Plaintiff's direct supervisor was a supervisory employee of Defendants. Defendants are liable for the conduct of their supervisory employees under Title VII.

111. The post-filing sequence described in Section O further extended the employment-period conditions affecting Plaintiff. Defendants selected Plaintiff for elimination while retaining her male colleagues, terminated her system access during the notice period, recruited her for an internal position, interviewed her,

failed to provide the stated follow-up, and selected a male candidate before Plaintiff's employment ended. The separation instruments described in Section O affected Plaintiff's separation pay and continued employment-related benefits during the same continuous employment period.

112.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, loss of professional standing, and other economic and non-economic damages.

## COUNT II

### VIOLATION OF THE EQUAL PAY ACT
*(29 U.S.C. § 206(d))*

113.   Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, I, K, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

114.   Plaintiff and her male colleagues on the five-person team performed work requiring equal skill, effort, and responsibility, under similar working conditions, within the same establishment. Plaintiff and her male colleagues held

28

the same job family classification and C-level designation, and shared core job duties, including program management, business-execution reporting, and investment-request processing functions within Defendants' Program Management – Business Execution organization. Following Plaintiff's September 2024 written complaint, Plaintiff was assigned additional work previously within the scope of a male colleague in the same classification, who on information and belief was compensated at a higher level within the published range for that classification. The additional work was performed without any adjustment to Plaintiff's compensation.

115. Defendants paid Plaintiff lower wages than her male colleagues for work requiring equal skill, effort, and responsibility, under similar working conditions. The compensation differential is documented in Defendants' own published compensation range data, including the published median of $142,300 and Plaintiff's annual compensation figures from 2022 through 2026.

116. Each paycheck issued to Plaintiff at a rate below that paid to similarly situated male colleagues for equal work constitutes a separate violation of 29 U.S.C. § 206(d). The applicable limitations period is two years, or three years for willful violation, pursuant to 29 U.S.C. § 255(a).

29

117. Defendants' violation was willful. Defendants had written notice of the compensation disparity as of September 2024. Defendants' supervisory employees acknowledged the disparity in writing at two management levels and stated it needed to be corrected. Defendants' Human Resources department declined to conduct an individual review. The disparity persisted through two subsequent annual compensation cycles. Four consecutive performance ratings of 2 eliminate any performance-based basis for the differential.

118. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and other damages. Plaintiff is entitled to back pay, liquidated damages in an equal amount for willful violation, and all other relief available under 29 U.S.C. §§ 206(d) and 216(b).

## COUNT III

### SEX-BASED PAY DISCRIMINATION
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

119. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, I, K, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

30

120. Plaintiff is female and a member of a protected class under Title VII.

121. Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive years, including years in which her ratings reflected performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

122. Plaintiff received lower compensation than similarly situated male employees who held the same job family classification and C-level designation.

123. On information and belief, male colleagues at equivalent or lower performance ratings were compensated at levels at or above the published median for the classification while Plaintiff was compensated below the median throughout her tenure on the team. The full comparator compensation and performance data is within Defendants' exclusive possession and control.

124. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

## COUNT IV

### RETALIATION
*(Equal Pay Act / FLSA, 29 U.S.C. § 215(a)(3))*

31

125. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, L, M, N, and O of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

126. On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a compensation practice under which Plaintiff was paid below the published median for her classification while Plaintiff's male colleagues in the same classification were paid at or above the median, in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Plaintiff's written complaint put Defendants on notice that Plaintiff was asserting a violation of the Equal Pay Act. This written complaint constitutes protected activity under 29 U.S.C. § 215(a)(3).

127. Defendants had knowledge of Plaintiff's protected activity. Plaintiff's direct supervisor, the direct supervisor's manager, and Defendants' Human Resources department were each made aware of the September 2024 written complaint.

128. Following Plaintiff's September 27, 2024 written complaint, Defendants took the following personnel actions: in 2024, assigned Plaintiff to

create productivity tracking and verification processes from zero; in 2024, assigned Plaintiff to create Monthly Operating Review reporting processes from zero; in January 2025, assigned Plaintiff to serve as Investment Request lead, a function outside her prior scope; on January 29, 2025, directed Plaintiff to serve as backup for a male colleague in the same classification who already had a designated backup; on March 14, 2025, assigned Plaintiff to investigate headcount matters outside her prior scope; on September 30, 2025, directed Plaintiff to again serve as backup for the same male colleague; reduced Plaintiff's work-from-home privileges following four consecutive performance ratings of 2; did not correct the compensation disparity during the 2024 or 2025 annual compensation cycles; and on March 4, 2026, notified Plaintiff that her position was being eliminated while her male colleagues on the same team were retained.

129. Defendants' post-filing conduct described in Section O constitutes additional retaliatory personnel actions following the September 2024 protected activity and the filing of this action. The separation instrument conditioning Plaintiff's receipt of separation pay on an inaccurate attestation, the recruitment of Plaintiff for an internal position followed by the selection of a male candidate with no follow-up to Plaintiff, and the revised separation instrument conditioning

payment on dismissal of this action with prejudice, are each adverse personnel actions within the meaning of 29 U.S.C. § 215(a)(3). The sequence of adverse actions is continuous from September 27, 2024 through May 11, 2026. No gap in the sequence exceeds approximately seven weeks.

130. Plaintiff's compensation was not adjusted to reflect any of the additional responsibilities assigned following her September 2024 written complaint.

131. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

## COUNT V

### RETALIATION
*(Title VII, 42 U.S.C. § 2000e-3(a))*

132. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, L, M, N, and O of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

34

133. On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a compensation practice under which Plaintiff was paid below the published median for her classification while Plaintiff's male colleagues in the same classification were paid at or above the median, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Plaintiff's written complaint put Defendants on notice that Plaintiff was opposing a practice made unlawful by Title VII. This written complaint constitutes protected opposition under 42 U.S.C. § 2000e-3(a).

134. The filing of this action on March 16, 2026 constitutes independent protected activity under 42 U.S.C. § 2000e-3(a), separate from and in addition to the September 2024 internal complaint. Defendants' post-filing conduct described in Section O — including the separation instrument conditioning separation pay on an inaccurate attestation, the recruitment-and-non-selection sequence, and the revised separation instrument conditioning payment on dismissal of this action with prejudice — constitutes materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination.

135. Following Plaintiff's protected activity, Defendants took materially adverse actions, including assigning Plaintiff additional uncompensated work

35

outside her prior scope, directing Plaintiff to provide corrective coverage for a male colleague who already had a designated backup, reducing Plaintiff's work-from-home privileges, declining to correct the compensation disparity through two annual compensation cycles, and selecting Plaintiff's position for elimination while retaining her male colleagues. The post-filing conduct described in Section O — including the separation instrument conditioning separation pay on an inaccurate attestation, the recruitment-and-non-selection sequence, and the revised separation instrument conditioning payment on dismissal of this action with prejudice — constitutes additional materially adverse actions. These actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

136. The sequence of adverse actions is continuous from September 27, 2024 through May 11, 2026.

137. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

**COUNT VI**

**AGE DISCRIMINATION**
*(ADEA, 29 U.S.C. § 623(a)(1))*

36

138.  Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, D, L, M, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

139.  Plaintiff was age 40 at the time Defendants notified her that her position was being eliminated. Plaintiff is a member of the class of individuals protected under the Age Discrimination in Employment Act of 1967.

140.  Plaintiff was qualified for her position. Plaintiff received the second-highest achievable performance rating for four consecutive years, including ratings that reflected her performance of both her original responsibilities and the additional responsibilities assigned following her September 2024 written complaint.

141.  Defendants selected Plaintiff's position for elimination as part of a reduction in force. Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were not selected for elimination.

142.  Defendants provided Plaintiff with the disclosure required by 29 U.S.C. § 626(f)(1)(H) in connection with the reduction in force. The disclosure

identifies the location, job title, and age of each individual in the decisional unit, including Plaintiff. Defendants stated that Plaintiff's functions would be absorbed by other employees retained by Defendants.

143. The selection criteria, business justification, and individual-level records underlying Defendants' decision to select Plaintiff's position for elimination remain within Defendants' exclusive possession and control.

144. Defendants' violation of the Age Discrimination in Employment Act was willful within the meaning of 29 U.S.C. § 626(b). At the time Defendants selected Plaintiff's position for elimination, Defendants were in possession of the information required to be disclosed under 29 U.S.C. § 626(f)(1)(H), including the age of each individual in the decisional unit. Defendants retained Plaintiff's male colleagues in the same job family classification and C-level designation, and distributed or will distribute Plaintiff's functions to employees under age 40. The selection criteria, business justification, and individual-level records underlying Defendants' selection decisions remain within Defendants' exclusive possession and control.

145. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

## COUNT VII

### SEX AND AGE DISCRIMINATION
*(Florida Civil Rights Act, Fla. Stat. § 760.10)*

146. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, I, J, K, L, M, and N of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

147. The Florida Civil Rights Act prohibits discrimination in compensation, terms, conditions, and privileges of employment based on sex and age. Fla. Stat. § 760.10.

148. Defendants' conduct as described in the preceding paragraphs constitutes discrimination based on sex and age in violation of Fla. Stat. § 760.10. The same factual predicate supporting Plaintiff's federal claims supports the state law claims in this Count.

39

149.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, emotional distress, and other economic and non-economic damages.

## COUNT VIII

### WHISTLEBLOWER RETALIATION
*(Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102)*

150.  Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, L, M, N, and O of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

151.  Plaintiff is an employee of a private employer within the meaning of Fla. Stat. § 448.101(3).

152.  On September 27, 2024, Plaintiff filed a written complaint with her direct supervisor objecting to a pay practice that violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). This written complaint constitutes protected activity under Fla. Stat. § 448.102(3).

40

153. Following Plaintiff's September 2024 written complaint, Defendants took retaliatory personnel actions, including: assigning additional work without commensurate compensation; declining to correct the compensation disparity through two annual compensation cycles despite written acknowledgment at two management levels; reducing Plaintiff's work-from-home privileges; and notifying Plaintiff that her position was being eliminated effective May 7, 2026, while her male colleagues in the same classification were retained.

154. Defendants' post-filing conduct described in Section O constitutes additional retaliatory personnel actions under Fla. Stat. § 448.102(3). The separation instrument conditioning Plaintiff's receipt of separation pay on an inaccurate attestation, the recruitment-and-non-selection sequence, and the revised separation instrument conditioning payment on dismissal of this action with prejudice, are each adverse actions following Plaintiff's protected disclosures.

155. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, and other damages compensable under Fla. Stat. § 448.103(2).

## COUNT IX

### RETALIATION

41

*(Age Discrimination in Employment Act, 29 U.S.C. § 623(d))*

156. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, F, G, H, I, J, K, L, M, N, and O of the Factual Allegations, as if fully set forth herein. Plaintiff does not incorporate the allegations of any other Count.

157. Plaintiff engaged in protected activity under 29 U.S.C. § 623(d). On April 2, 2026, Plaintiff filed an EEOC charge alleging, among other things, age-based discrimination in connection with Defendants' reduction in force. On March 16, 2026, Plaintiff filed this action, which includes Count VI alleging age discrimination under the ADEA. Each constitutes protected activity under 29 U.S.C. § 623(d). Plaintiff's September 27, 2024 written complaint to her direct supervisor objecting to Defendants' compensation practices constitutes additional protected activity to the extent it opposed practices Plaintiff reasonably believed to be unlawful.

158. Defendants had knowledge of Plaintiff's protected activity. Plaintiff's direct supervisor received the September 2024 written complaint. Defendants' litigation counsel entered an appearance in this action on April 8, 2026.

42

159. Following Plaintiff's protected activity, Defendants engaged in a series of adverse personnel actions, including the actions described in Sections J, K, L, and M of the Factual Allegations, and the post-filing conduct described in Section O, including the separation instrument conditioning Plaintiff's receipt of separation pay on an inaccurate attestation, the recruitment of Plaintiff for an internal position followed by the selection of a male candidate with no follow-up to Plaintiff, and the revised separation instrument conditioning payment on dismissal of this action with prejudice.

160. The temporal proximity between Plaintiff's protected activity and Defendants' adverse actions, combined with the continuous sequence of adverse personnel actions from September 27, 2024 through May 11, 2026, supports an inference of causal connection between the protected activity and the adverse actions.

161. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost compensation, lost employment benefits, and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and grant the following relief:

43

For purposes of this Prayer for Relief, the term 'compensation' shall include base salary, annual bonus, long-term incentive awards, deferred compensation, employer 401(k) contributions, pension and cash-balance plan accruals, equity awards, and the value of health, welfare, and other employment benefits, in addition to such other elements of total compensation as the Court determines to be within the scope of make-whole relief under applicable law.

A.    Under Count I (Title VII — Hostile Work Environment) and Count III (Title VII — Sex-Based Pay Discrimination): back pay from the date of Plaintiff's separation from employment through the date of judgment, calculated using Plaintiff's final annualized compensation plus the annual compensation increases Plaintiff would have received;

B.    Under Counts I and III: reinstatement to Plaintiff's former position or a substantially equivalent position within the same job family classification and C-level designation, or, in the alternative, front pay for a period to be determined by the Court, reflecting Plaintiff's age at the time of separation, more than fifteen years of cumulative tenure, and the specialized nature of her role;

44

C.     Under Counts I and III: compensatory damages for emotional distress, humiliation, and loss of professional standing, in an amount to be determined at trial, up to the statutory maximum for employers with more than 500 employees pursuant to 42 U.S.C. § 1981a(b)(3)(D);

D.     Under Counts I and III: punitive damages for Defendants' malice or reckless indifference to Plaintiff's federally protected rights, in an amount to be determined at trial, subject to the combined statutory cap under 42 U.S.C. § 1981a(b)(3)(D);

E.     Under Count II (Equal Pay Act): back pay representing the compensation differential for the full statutory period, including a three-year lookback for willful violation under 29 U.S.C. § 255(a), with each discriminatory paycheck constituting a separate violation;

F.     Under Count II: liquidated damages in an amount equal to back pay for willful violation, pursuant to 29 U.S.C. § 216(b);

G.     Under Count IV (EPA/FLSA Retaliation) and Count V (Title VII Retaliation): back pay, front pay, and compensatory damages on the independent bases provided by 29 U.S.C. § 215(a)(3) and 42 U.S.C. § 2000e-3(a), respectively;

H.    Under Count VI (ADEA): back pay from the date of Plaintiff's separation through the date of judgment; liquidated damages in an amount equal to back pay for willful violation under 29 U.S.C. § 626(b); and reinstatement to Plaintiff's former position or a substantially equivalent position, or, in the alternative, front pay as an equitable remedy;

I.    Under Count VII (Florida Civil Rights Act): back pay; compensatory damages for mental anguish, loss of dignity, humiliation, and loss of professional standing; and punitive damages, as provided under Fla. Stat. § 760.11(5);

J.    Under Count VIII (Florida Private Sector Whistleblower Act, Fla. Stat. § 448.103(2)): reinstatement to Plaintiff's former position with the same seniority status Plaintiff would have had absent the violation; compensation for lost wages, benefits, and other remuneration; and compensation for any other monetary loss directly caused by the violation;

K.    A permanent injunction pursuant to 42 U.S.C. § 2000e-5(g)(1) and 29 U.S.C. § 626(b) requiring Defendants to cease discriminatory compensation practices on the basis of sex and age among employees in equivalent job family classifications and C-level designations; to conduct a compensation

46

equity audit of employees within Plaintiff's classification and substantially equivalent classifications, with results reported to the Court; to implement written policies governing compensation decisions and reduction-in-force selection criteria to ensure compliance with the Equal Pay Act, Title VII, and the Age Discrimination in Employment Act; and to submit annual compliance certifications for a period of three years from the date of judgment;

L.    A declaration pursuant to 28 U.S.C. § 2201 that Defendants' compensation practices and reduction-in-force selection practices with respect to employees in Plaintiff's classification and substantially equivalent classifications violate the Equal Pay Act of 1963, 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1);

M.    An award sufficient to offset the adverse federal and state income tax consequences to Plaintiff of receiving any lump-sum back pay and front pay award under any Count, which tax consequences would not have been incurred had Plaintiff been compensated in the ordinary course of employment;

47

N.     Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 216(b), 29 U.S.C. § 626(b), Fla. Stat. § 448.104, and Fla. Stat. § 760.11;

O.     Prejudgment and post-judgment interest at the applicable federal rate on all amounts awarded;

P.     As to Count IX, back pay, liquidated damages for willful violation pursuant to 29 U.S.C. § 626(b), and all other relief available under the Age Discrimination in Employment Act;

Q.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims for which a jury trial is available.

Date: _____                    Respectfully submitted,

                                                  _____

                                                  Yuliya Glazman
                                                  Plaintiff, pro se
                                                  2110 Thousand Trails Road
                                                  Clermont, FL 34714
                                                  (407) 794-6503
                                                  yglazman@protonmail.com

49

## CERTIFICATE OF SERVICE

I hereby certify that on [DATE], I served the foregoing Second Amended

Complaint on all counsel of record by [method of service].

_____

Yuliya Glazman